Argued and submitted December 20, 1996, affirmed March 19, 1997

STATE OF OREGON,
*Appellant,*

*v.*

DENISE STROUP,
*Respondent.*

(95CRM0040; CA A91562)

935 P2d 438

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Judith Brant, Assistant Attorney General.

Daniel Q. O'Dell, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant was charged with driving while under the influence of intoxicants (DUII). ORS 813.010.[1] She moved to suppress the evidence of what occurred after her vehicle was stopped on the ground that the arresting police officer did not have probable cause to administer field sobriety tests under Article I, section 9, of the Oregon Constitution.[2] *See State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994) (holding that the administration of field sobriety tests constitutes a search within the meaning of section 9). The trial court allowed her motion, and the state appeals. We affirm.

■　In reviewing an order resolving a motion to suppress, we are bound by the trial court's findings of historical fact if they are supported by the evidence in the record. We determine whether the trial court applied the proper legal principles to those findings to reach a correct legal conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). The trial court found: On January 3, 1995, at approximately 3:20 a.m., Peter Jenista, a police officer employed by the City of Grants Pass, saw a vehicle in front of him traveling west bound on J Street. Jenista observed that the vehicle's left brake and tail lights were illuminated. As the vehicle turned left, the entire left tail light went dark. Jenista continued to follow the vehicle and observed it make a U-turn, at which point he activated his patrol car's overhead lights.

In response to Jenista's signals, the vehicle pulled over to the curb, and Jenista saw defendant get out of the vehicle from the driver's side. He did not notice any instability or unusual movements on her part. Jenista then left his

---

[1] ORS 813.010 provides, in part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *;

"(b) Is under the influence of intoxicating liquor or a controlled substance[.]"

[2] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons * * * against unreasonable search, or seizure; and no warrant shall issue but upon probable cause."

patrol car and walked towards defendant. When he made contact with her, Jenista told defendant that he had stopped her because her vehicle's left brake light was not functioning. He asked to see her driver's license, vehicle registration and proof of insurance. Defendant explained that she did not have any of those documents, that the vehicle was borrowed and that she did not know about the problem with the tail light.

Jenista noticed a slight odor of alcohol emitting from defendant and that she had bloodshot eyes. He then conducted an Horizontal Gaze Nystagmus (HGN) test on defendant. Based on the odor of alcohol, her bloodshot eyes, the HGN results, and her failure to produce the requested documents, Jenista believed that he had sufficient probable cause for a DUII arrest. He continued his investigation by asking defendant a series of questions including whether she had been drinking. Defendant admitted that she had drunk a couple of beers at approximately 5:00 p.m. Jenista also advised defendant of the consequences of refusing to perform field sobriety tests and administered seven field sobriety tests, including a second HGN test. Ultimately, defendant was arrested and an Intoxilyzer breath test was administered.

After a pretrial hearing on defendant's motion, the trial court ruled:

> "On contact, Jenista made observations of Defendant's physical condition sufficient for reasonable suspicion to believe Defendant may be under the influence of intoxicants. Jenista's questions of the Defendant for the Alcohol Influence Report Form were reasonable under the circumstances and Defendant's responses were voluntary as was Defendant's initial participation in the first H.G.N test administered by Jenista.
>
> "* * * * *
>
> "The State has failed to prove Jenista had probable cause to arrest the Defendant before the field sobriety test's [sic]. The officers [sic] only basis for probable cause was a light odor of alcohol on Defendant's breath, bloodshot eyes and her admitting to drinking some hours earlier. This Court does not give any legal significance to Jenista's claim

of probable cause based on his first H.G.N observation's [*sic*]. There is nothing in the record to support that conclusion. The officer did not describe the manner of administering an H.G.N test, the results as he observed them nor what 'three indicators in each eye' means in making such an evaluation. The officer had no probable cause to arrest before the unlawful search of Defendant through the field sobriety test questions and physical requirements."

The court then clarified its ruling:

"The State is not precluded from offering evidence of Jenista's observations of Defendant's physical condition at the time she was stopped and during the initial contact including observations made of the Defendant during Jenista's initial H.G.N test. Nor is the State precluded from offering Defendant's verbal responses to Jenista's questioning until he advised her under ORS 813.135 and 813.136."[3]

The state argues that Jenista had probable cause to believe that defendant was under the influence of intoxicants at the time that he asked her to undergo field sobriety tests. Under ORS 813.010(1)(b), a person is under the influence of intoxicating liquor or a controlled substance when the person's physical or mental facilities are adversely affected to a noticeable or perceptible degree. *State v. O'Key*, 321 Or 285, 307 n 31, 899 P2d 663 (1995). Because requiring a person to submit to field sobriety tests constitutes a search under Article I, section 9, probable cause must exist to believe that the person is under the influence before the person can be subjected to the test. In general, probable cause for a warrantless search exists when the officer subjectively believes that a crime has been committed and that evidence of the crime can be procured by the seizure of the person or the thing. Also, the officer's belief must be objectively reasonable under the circumstances. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Here, the officer held the requisite subjective belief, and the only issue is whether his belief was objectively reasonable.

---

[3] ORS 813.135 and ORS 813.136 provide in substance that any person who operates a vehicle on a public highway is deemed to have given consent to the administration of field sobriety tests and that a refusal to submit to field sobriety tests is admissible in a subsequent court proceeding when the person is advised of the consequences of the refusal.

The state relies on the odor of defendant's breath, her bloodshot eyes, her inability to produce identification, her admission that she had been drinking and the HGN test results as indicia of objective probable cause. First, it argues that the trial court's findings that Jenista noticed only a "slight" odor of alcohol is not supported by the record.[4] The state points out that Jenista later characterized the odor as "moderate" after getting closer to defendant. However, as defendant points out, the officer had difficulty describing the exact sequence of events throughout his testimony, and it is not clear exactly when the observation about the "moderate" odor occurred. Because the evidence could be considered conflicting, the trial court was not required to give weight to Jenista's second observation. Consequently, there is evidence to support the trial court's findings that the odor was only "slight."

■ The state next argues that the trial court erred when it did not take into account the officer's observations during the HGN test. Defendant argues that the trial court's ruling was correct because *State v. O'Key* requires the state to show

> "that the officer who administered the test was properly qualified, the test was administered properly, and the test results were recorded accurately." 321 Or 285, 322-23, 899 P2d 663 (1995).

Defendant points out that Jenista merely made a conclusory recital that he had observed "six indicators" without explaining the import of his observations. Jenista testified:

> "A. * * * I did administer a horizontal gaze nystagmus test, at that point.

> "Q. And could you tell me what the results of that test were?

> "A. Ms. Stroup exhibited six (6) of the points listed on the horizontal gaze nystagmus testing criteria. There are six (6) indicators we're looking for, three (3) in each eye and she demonstrated three (3) in each eye for a total of six (6)."

---

[4] In the trial court's findings, it found that the odor was "slight." In its conclusions, the court characterizes the odor as "light." For purposes of this opinion, we infer that the words were meant to be synonymous.

We agree with defendant. Because the state did not elicit testimony about how the test was performed and the significance of Jenista's observations, the court in its factfinding capacity was not bound to give weight to the officer's conclusory testimony.

■ The state also argues that the trial court should have considered defendant's inability to produce identification. However, there is nothing in the record to suggest a correlation between defendant's failure to have a driver's license and vehicle registration documents with her and a mental or physical impairment because of the consumption of alcoholic beverages. All the evidence suggests is that she did not have the documents with her, a fact that by itself does not indicate that she was perceptively affected by the alcoholic beverages she admitted consuming 10 hours earlier. We conclude that the trial court's probable cause analysis, which was limited to the import of a slight odor of alcohol on defendant's breath, bloodshot eyes and her admission, was proper in light of our standard of review.

■ Whether Jenista's belief that he had probable cause to require defendant to undergo the field sobriety tests was objectively reasonable depends on the totality of the circumstances. Defendant was not stopped for erratic driving, nor did she exhibit any of the typical characteristics of a person who is under the influence, such as slurred speech or impaired balance. By themselves, a slight odor of alcohol, bloodshot eyes and an admission of drinking alcoholic beverages do not establish probable cause that defendant was mentally or physically impaired by her consumption of alcoholic beverages as required by ORS 813.010(1)(b). In fact, there is a complete paucity of evidence about impairment when the initial HGN test result is disregarded. We conclude that the trial court correctly ruled that Jenista lacked objective probable cause under ORS 813.010(1)(b) to subject defendant to field sobriety tests.

Affirmed.