OPINION OF THE COURT
George J. Pulver, Jr., J.
Factual Background
Indictment No. 00-017, which is scheduled for jury trial commencing June 27, 2000 at 9:00 a.m., charges defendant Edward P. Vanderlofske with one count of the class E felony of operat *183 ing a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (3) and § 1193 (1) (c).
Presently before the court is the question of whether the administration and interpretation of the results of the field sobriety test known as horizontal gaze nystagmus (hereinafter HGN) as an indicator of intoxication satisfies the New York standard of scientific reliability such that the prosecution should be permitted to lay a foundation for its admission into trial evidence (see, Frye v United States, 293 F 1013).
Despite notations on the supporting deposition and DWI bill of particulars that an HGN test had been administered to defendant, the defense did not request a Frye hearing in its omnibus motion. Moreover, at the suppression hearing, when the People attempted to introduce HGN evidence, the defense successfully objected on the basis that the Frye test had not been satisfied. In sustaining the objection, the court stated that, “if the police officer is qualified to conduct the test and the technique is done in accordance with the requirements and the scientific community found it to be generally acceptable and reliable, [the court would rule it] admissible” (suppression hearing transcript, at 60). Furthermore, the court explicitly stated, “This is going to come up again at trial, this issue” (suppression hearing transcript, at 60), to which defense counsel responded, “Not only at trial [but also] I suspect, in the next several years, a plethora of probable cause hearings” (suppression hearing transcript, at 60). Despite this, defense counsel’s request for a Frye hearing regarding the admissibility of the HGN test results was brought by order to show cause at approximately 4:00 p.m. on Thursday, June 22, 2000. After granting the defense’s request (see, People v Heidelmark, 214 AD2d 767, 769; People v Erickson, 156 AD2d 760, 762; People v Torrey, 144 AD2d 865, 866), the court scheduled the Frye hearing to commence at 8:30 a.m. on June 27, 2000.
Appearances at the Frye hearing were made by Greg D. Lubow, Public Defender, and Sean Doolan, Assistant District Attorney. This hearing was conducted in the defendant’s absence for the following reasons: At his February 8, 2000 arraignment, Edward Vanderlofske was informed of the requirement to appear for all scheduled processes of his case and advised of the possibility that the criminal justice process might go on in his absence if he failed to appear. At this arraignment, and while represented by counsel, the defendant acknowledged having been informed of the possible consequences of failing to *184 appear and that he understood the consequences by executing two written “Parker Admonishments” which advised him of, inter alia, the aforementioned requirements and consequences. However, the defendant has failed to maintain contact with his counsel and/or keep his counsel informed of his present whereabouts. Accordingly, any failure to know of the Frye hearing was due to defendant’s own actions. Having found no reason to delay., a hearing with which the People, the court and the deféiise were prepared to go forward, the court exercised its discretion to conduct the scheduled Frye hearing in the defendant’s absence (see, People v Parker, 57 NY2d 136).
Standard of Law
New York’s admissibility standard for novel scientific evidence/techniques, as applied to this case, is whether the procedure and results of the horizontal gaze nystagmus test administered as a field sobriety test have been generally accepted within the relevant scientific community as a reliable indicator of intoxication (see, People v Wesley, 83 NY2d 417; Frye v United States, 293 F 1013, supra).
Findings of Fact
Optometry is the study of the anatomy and pharmacology of the eye and neurology as it pertains to the eye. Accordingly, the court finds that the field of optometry is the relevant scientific community for purposes of determining whether the HGN field sobriety test has been generally accepted as a reliable indicator of intoxication.
The People presented the testimony of optometrist Jack E. Richman, O.D., F.A.A.O., F.C.O.V.D., who was accepted by the court, with no objection by the defense, as an expert in the fields of optometric function, the HGN test, and the effects of alcohol on the human eye. The court’s acceptance of Dr. Rich-man as an expert in these fields was based on his biographical profile and curriculum vitae, as well as his testimony regarding his education, training, licensing, enrollment in professional organizations, receipt of awards in the field of optometry, role as a lecturer/trainer/consultant regarding HGN as a field sobriety test, and status as a published author on the topic of the HGN field sobriety test as an indicator of intoxication. Furthermore, Dr. Richman is certified as a standardized field sobriety instructor by the National Transportation and Highway Safety Administration and has observed law enforcement personnel administer and interpret the HGN field *185 sobriety test in varying conditions and has participated in over a hundred arrests based, in part, on such test.
“Nystagmus” is defined as the eye’s loss of ability to be held steady on a fixed target. When the mechanism which permits the eye to perform such function is disrupted, a movement of the eye may be seen off, on, and around the fixed target. This is otherwise referred to as a loss of smooth pursuit movement.
The HGN field sobriety test, which has been used by, law enforcement for over 25 years and was taken from the clinical practice of an optometric eye examination, consists of three separate tests:
(a) Evaluation of smooth pursuit movement—where the officer observes whether the eye is able to focus on and follow a target held approximately 12 to 15 inches in front of the subject and moved from center to side and back. The inability of the eye to move smoothly is the presence of nystagmus.
(b) End point nystagmus (maximum deviation)—where the officer observes whether the eye, when held at an approximately 70 degree angle, is able to be held steady for a minimum of four seconds. When the eye cannot be held steady but, instead, keeps trying to go to the center and then jerks back to the side, nystagmus is present.*
(c) Angle of onset of nystagmus—where the officer looks for the angle at which nystagmus is first present in the eye. The onset of nystagmus prior to or at a 45 degree angle is a significant clue that the person has a blood alcohol content level (BAG) of .08 or higher.
During the HGN field sobriety test, each eye is tested on each of the three above-mentioned tests.
One point may be assessed for each eye’s failure of each of the three components of the HGN field sobriety test. Therefore, a maximum of six points may be assessed if the subject has failed each test on both eyes; a score of four points constitutes failure of the HGN field sobriety test.
The court concurs with Dr. Richman’s opinion that, similar to a layperson’s ability to learn how to perform the Heimlich maneuver or CPR, a layperson (i.e., one with little or no medical training) may be trained to perform the HGN field sobriety test and to interpret its results.
Hence, if a law enforcement officer has attended and been trained in standardized field sobriety testing and training, and *186 successfully passed the testing component of such training course at the completion thereof, the officer is competent to administer and interpret the results of the HGN field sobriety test.
Alcohol consumption can create nystagmus because alcohol, as a central nervous system depressant, slows down the brain’s ability to coordinate a steady eye.
There is a direct correlation between the amount of alcohol a person has imbibed and the effects on the central nervous system such that the more alcohol present in a person’s system the more impairment there is of the central nervous system.
In Dr. Richman’s opinion, the administration of the three HGN field sobriety tests and the results thereof are generally accepted within the field of optometry as a reliable indicator of intoxication.
Dr. Richman is the co-author of an article entitled The Competency and Accuracy of Police Academy Recruits in the Use of the Horizontal Gaze Nystagmus Test for Detecting Alcohol Impairment, which was published in the 1994 Winter edition of the New England Journal of Optometry after being subjected to peer review.
“Peer review” means that persons with similar expertise as the author(s) analyze the study’s methodology and conclusions and ensure that prior research supports the article. Recommendations for revisions may be made by the peer reviewers.
Dr. Richman’s article, The Competency and Accuracy of Police Academy Recruits in the Use of the Horizontal Gaze Nystagmus Test for Detecting Alcohol Impairment, was a blind study of 30 police academy recruits who administered the HGN field sobriety test protocol to drinking and nondrinking participants. This study found that the officer recruits were able to accurately identify impaired persons 87.78% of the time and nonimpaired persons 86.67% of the time. “Impaired” was defined as .08 BAG.
A 1986 article entitled Use of Horizontal Gaze Nystagmus as a Part of Roadside Sobriety Testing, written by optometrists Gregory W. Good and Arol R. Augsburger, was published in the American Journal of Optometry & Physiological Optics. This article was based on a study of data collected by the Ohio State Police in approximately 2,500 driving while under the influence of alcohol arrests where the arrested persons subsequently had their blood alcohol content measured.
The Good/Augsburger article finds that the HGN field sobriety test is the most accurate of these psychophysical tests *187 with an accuracy of 77% as compared to 68% accuracy for the “one-leg-stand” and 65% for the “walk-and-turn” sobriety tests.
Conclusions of Law
After considering all of the evidence presented at the Frye hearing, the court gives full credence to the testimony of the People’s expert witness Dr. Richman and the People’s exhibits entered into evidence in support of the doctor’s testimony.
Accordingly, the court finds, as a matter of law, that the administration procedures of the HGN field sobriety test, as well as the HGN field sobriety test results, are generally accepted within the scientific community of optometrists as a reliable indicator of intoxication (see, Frye v United States, 293 F 1013, supra; People v Wesley, 83 NY2d 417, supra).
Therefore, the People are permitted to attempt to lay an evidentiary foundation at trial for HGN evidence as relevant to defendant. To do so, the People must prove that New York State Trooper Jeffrey Holliday was trained in the administration of the HGN field sobriety test and that his administration of such test to defendant Edward Vanderlofske, as well as his scoring/assessment of the results of such testing, was in accordance with the accepted techniques/procedures (see, People v Wesley, 83 NY2d 417, 424, supra).
Should the People lay the proper foundation to allow the admission into evidence of defendant’s HGN field sobriety test results, the weight to be accorded such results is to be determined by the jury, the finder of facts.
The court will not rule on the People’s request that it determine whether the aforementioned proper foundation may be laid by the testimony of the Trooper alone or whether expert testimony is necessary. This issue is not properly before the court in the context of the Frye hearing.

 A video demonstrating the absence and presence of nystagmus during this test was shown to the court, and narrated by Dr. Richman.