2002 SD 83

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Timothy HULLINGER, Defendant and Appellee.**

No. 22132.

Supreme Court of South Dakota.

Considered on Briefs April 22, 2002.

Decided July 10, 2002.

Mark Barnett, Attorney General, Gary R. Campbell, Assistant Attorney General, Thomas P. Maher, Stanley County States Attorney, Fort Pierre, South Dakota, Attorneys for plaintiff and appellant.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Pursuant to SDCL 23A–32–5, the State petitioned for an interlocutory appeal from a magistrate court order suppressing evidence of a horizontal gaze nystagmus (HGN) test. We granted the petition. The State raises first impression issues regarding admission of the HGN test in prosecutions for driving under the influence in this state. We reverse and remand.

## FACTS AND PROCEDURE

[¶ 2.] On March 18, 2001, Stanley County deputy sheriff David Ludwig observed a red Camaro driving slowly out of Fort Pierre. Ludwig noticed its driver touch the curb and cross the center line several times. At the Bad River bridge, the Camaro traveled in the oncoming lane, then jerked back to the proper lane and crossed the fog line. Ludwig activated his emergency lights and the driver increased his speed as he traveled southward on Highway 83. He continued approximately 1 to 1–1/2 miles before pulling to the roadside and stopping.

[¶ 3.] The driver of the vehicle, Timothy Hullinger, provided his driver's license and registration at Ludwig's request. Ludwig noted Hullinger's eyes were bloodshot and watery and the odor of alcohol emitted from his vehicle. When Hullinger spoke, Ludwig noted his speech was slurred. Ludwig explained he stopped Hullinger for erratic driving and asked him to have a seat in the patrol vehicle and then to perform some field sobriety tests. Ludwig noted that Hullinger staggered as he walked.

[¶ 4.] Hullinger correctly recited the alphabet but Ludwig again noted his slurred speech. Ludwig next administered the horizontal gaze nystagmus (HGN) test which required Hullinger to keep his eyes on an object, in this case a pen, while Ludwig slowly moved it through space. Ludwig noted Hullinger could not smoothly follow this object. His eyes showed nystagmus at maximum deviation and an onset of nystagmus prior to 45 degrees. Hullinger was then asked to count backwards from 1988 to 1969. He was able to recite these years correctly, but slurred speech was again noted.

[¶ 5.] All of these tests were performed inside the patrol vehicle. When Ludwig asked Hullinger to perform some outside field sobriety tests, Hullinger stated that he had a problem with one of his legs and asked why he needed to perform more tests. Ludwig then administered a breathalyzer (PBT) which registered over .10 percent blood alcohol content (BAC).

He arrested Hullinger for driving under the influence. Hullinger refused to provide a blood sample and was transported to jail where his driver's license was confiscated and he was issued a 30–day temporary driving permit.

[¶ 6.] The State charged Hullinger with driving under the influence in violation of SDCL 32–23–1(2) and careless driving in violation of SDCL 32–24–8. It later amended its complaint to add a charge of reckless driving in violation of SDCL 32–24–1. Following the initial charges, Hullinger filed a motion to exclude evidence of the HGN test, claiming that Deputy Ludwig was not an expert and should be precluded from testifying about his opinions or conclusions with regard to his administration of this test.

[¶ 7.] The court ruled that no witness would be permitted to testify about Hullinger's performance on the HGN test until the State presented sufficient foundational evidence to justify introduction of such testimony. At the pretrial hearing, the State presented three witnesses: 1) Monte Farnsworth, training director for the Office of Highway Safety at the Division of Criminal Investigation Law Enforcement Training Academy; 2) Deputy Ludwig; and 3) Dr. Larry Menning, optometrist and expert witness. Farnsworth testified that he is a standardized field sobriety test instructor who has instructed approximately 700 police officers in administering the HGN test and analyzing its results. He further testified on these test methods, their standardization and reliability. Ludwig testified regarding his administering the test to Hullinger, its results, and his training and experience in administering the test. Dr. Menning testified regarding the effects of alcohol on the central nervous system, recognized studies regarding the HGN test and its scoring criteria, and correlation of HGN test results and blood alcohol concentration. In addition, the State introduced copies of these HGN test studies into evidence. Hullinger had no objection to their admission.

[¶ 8.] Following the hearing, the court entered an order excluding evidence of the HGN test at trial on grounds that it was irrelevant and that its probative value was substantially outweighed by the danger of unfair prejudice to the defendant or that it would confuse the issues or mislead the jury. In large part, the court based its conclusion on the fact that Hullinger was charged with driving under the influence in violation of SDCL 32–23–1(2) and not charged with having a BAC of .10 percent or greater in violation of SDCL 32–23–1(1). The State claims the suppression order was an abuse of the trial court's discretion and specifically raises three issues:

1. Whether the magistrate court was clearly erroneous in finding that a positive HGN test indicates the presence of .10 percent alcohol in Hullinger's blood but does not indicate whether he is under the influence of alcohol.

2. Whether evidence of a properly administered HGN test, the results of which indicate the presence of nystagmus, is relevant to whether a person is under the influence of alcohol.

3. Whether the magistrate court was clearly erroneous in finding the probative value of a positive HGN test is substantially outweighed by unfair prejudice, confusion of the issues, and misleading the jury.

## ANALYSIS AND DECISION

[¶ 9.] Our standard of review for a trial court's grant or denial of a motion to suppress is abuse of discretion. *State v. Anderson*, 1996 SD 59, ¶ 8, 548

N.W.2d 40, 42. An abuse of discretion is discretion "exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Gesinger,* 1997 SD 6, ¶ 8, 559 N.W.2d 549, 550. Further, it is well settled that,

A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. This Court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.

*State v. Belmontes,* 2000 SD 115, ¶ 9, 615 N.W.2d 634, 637 (internal citations omitted).

[¶ 10.] Many state courts have recently addressed the issue of admissibility of HGN evidence in driving under the influence cases. The Indiana Court of Appeals recently provided this explanation of HGN and its field testing procedures:

'Nystagmus is an involuntary jerking of the eyeball. [The involuntariness differentiates it from other field sobriety tests.] The jerking may be aggravated by central nervous system depressants such as alcohol or barbiturates. [citation omitted]. Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they are turned to the side. In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.' ... [A]s long ago as 1977 the National Highway Traffic Safety Administration, U.S. Department of Transportation, concluded that HGN along with walk-and-turn and one-leg stand tests were the most effective roadside testing to detect impaired drivers. Psychophysical Tests for DWI Arrest, No. DOT–HS–802–424 (June 1977).

*Cooper v. State,* 761 N.E.2d 900, 902–03 (Ind.Ct.App.2002).

[¶ 11.] We previously decided an appeal in which an HGN test was administered as part of field sobriety testing, however its admissibility was not in issue. *State v. Meek,* 444 N.W.2d 48, 50 (S.D. 1989). In *Meek,* an interlocutory appeal by the State, we ruled that the verbal and dexterity field sobriety test results should not have been suppressed against the defendant's claim of his Fifth Amendment right against self-incrimination. Unlike the present case, the trial court in *Meek* did not suppress testimony concerning the gaze nystagmus test or the officer's observations concerning Meek's physical characteristics. Meek did not appeal this ruling. As the State notes, the issues raised in the present appeal are first impression issues in South Dakota.

[¶ 12.] The overwhelming majority of jurisdictions having addressed the issue permit the admission of evidence of HGN testing in criminal trials involving charges of driving while intoxicated. *Klentz v. State,* 2002 WL 534156 (TexCtApp, Apr. 11, 2002); *Decker v. State,* 2002 WL

531136 (Alaska Ct.App., Apr.10, 2002); *State v. Krause,* 309 Mont. 174, 44 P.3d 493 (2002); *State v. Decker,* 2002 WL 499416 (OhioCt.App., Apr. 01, 2002); *Henderson v. Director, ND DOT,* 640 N.W.2d 714 (N.D.2002); *Fletcher v. Shahan,* 2002 WL 499883 (Del.Super.Ct., Mar. 06, 2002); *State v. Pjura,* 68 Conn.App. 119, 789 A.2d 1124 (2002); *Cooper,* 761 N.E.2d 900; *Kirkland v. State,* 253 Ga. App. 414, 559 S.E.2d 161 (2002) (officer's testimony as to his opinion of what 6 points of HGN test indicate about person's level of intoxication was admissible); *People v. Herring,* 327 Ill.App.3d 259, 261 Ill.Dec. 259, 762 N.E.2d 1186 (2002) (reversed and remanded for *Frye* hearing); *Village of Plover v. Pittman,* 638 N.W.2d 395 (Wisc.Ct.App. 2001); *State v. Bebb,* 2001 WL 953735 (Hawai'i.Ct.App., Aug.22, 2001); *State v. Duffy,* 146 N.H. 648, 778 A.2d 415 (N.H.2001) (reliability hearing required before admission); *State v. Tyler,* 107 Wash.App. 1009, 2001 WL 789730 (Wash.Ct.App., Jul.13, 2001); *Karamychev v. Dist. of Columbia,* 772 A.2d 806 (D.C. 2001) (arresting officer was qualified to testify as an expert regarding the results of HGN test he administered to defendant to determine sobriety); *State v. Bradley,* 57 S.W.3d 335 (Mo.Ct.App.2001) (court acted within its discretion in allowing officer to testify as expert concerning HGN);

*State v. Forrest,* 174 Or.App. 129, 25 P.3d 392 (2001); *White v. State,* 73 Ark.App. 264, 42 S.W.3d 584 (2001); *State v. Van Kirk,* 306 Mont. 215, 32 P.3d 735 (2001) (erroneous introduction of HGN without proper foundation was harmless); *Shaw v. State,* 783 So.2d 1097 (Fla.Dist.Ct.App. 2001); *State v. Doriguzzi,* 334 N.J.Super. 530, 760 A.2d 336 (2000) (HGN is scientific test that must meet *Frye* standard of admissibility); *Smith v. State,* 11 P.3d 931 (Wyo.2000) (if the evidence establishes the tests were properly administered by a qualified person, the foundation is sufficient for admission in an administrative hearing);[1] *State v. Baue,* 258 Neb. 968, 607 N.W.2d 191 (2000) (citing cases in other state jurisdictions having approved use of HGN in driving under the influence cases); *State v. Baity,* 140 Wash.2d 1, 991 P.2d 1151 (2000); *People v. Vanderlofske,* 186 Misc.2d 182, 717 N.Y.S.2d 450 (N.Y.Co.Ct.2000) (administration procedures and results of HGN test generally accepted within scientific community of optometrists as reliable indicator of intoxication, thus results are admissible if officer who administered test was properly trained and administration and scoring of the test was in accordance with accepted techniques and procedures); *State v. Torres,* 127 N.M. 20, 976 P.2d 20 (N.M.1999) (results of HGN testing constitute scienti-

---

1. The *Smith* court observed:

    In the criminal context, a significant number of courts have held that admission of sobriety tests, including the horizontal gaze nystagmus test, is appropriate as long as a proper foundation as to the techniques used and the officer's training, experience, and ability to administer the test has been laid. *State v. Ito,* 90 Hawai'i 225, 978 P.2d 191, 201 (1999); *Ballard v. State,* 955 P.2d 931 (Alaska Ct.App.1998); *Zimmerman v. State,* 693 A.2d 311 (Del.Super.Ct. 1997); *State v. Taylor,* 694 A.2d 907 (Me.1997); *Hawkins v. State,* 223 Ga.App. 34, 476 S.E.2d 803 (1996); *People v. Berger,* 217 Mich.App. 213, 551 N.W.2d 421 (1996); *Schultz v.*

    *State,* 106 Md.App. 145, 664 A.2d 60 (1995); *Emerson v. State,* 880 S.W.2d 759 (Tex. Crim.App.), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994); *People v. Buening,* 229 Ill.App.3d 538, 170 Ill.Dec. 542, 592 N.E.2d 1222 (1992), *appeal denied,* 146 Ill.2d 634, 176 Ill.Dec. 806, 602 N.E.2d 460 (1992); *State ex rel. Hamilton v. City Court of City of Mesa,* 165 Ariz. 514, 799 P.2d 855 (1990); *State v. Murphy,* 451 N.W.2d 154 (Iowa 1990); *State v. Armstrong,* 561 So.2d 883 (La.Ct.App.), *writ denied,* 568 So.2d 1077 (La.1990); *State v. Clark,* 234 Mont. 222, 762 P.2d 853 (1988). 11 P.3d at 935.

fic evidence that must meet the standard of evidentiary reliability articulated in *Daubert* ); *State v. Murphy*, 953 S.W.2d 200 (Tenn.1997) (HGN evidence must be offered through expert testimony); *State v. Berger*, 217 Mich.App. 213, 551 N.W.2d 421 (1996) (only foundation required is that test was properly conducted and officer qualified to administer it); *Salt Lake City v. Garcia*, 912 P.2d 997 (Utah Ct.App. 1996); *People v. Joehnk*, 35 Cal.App.4th 1488, 42 Cal.Rptr.2d 6 (Cal.Ct.App.1995); *State v. Klawitter*, 518 N.W.2d 577 (Minn. 1994); *State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766 (S.C.1993) (testimony relating to HGN test was admissible when used in conjunction with other field sobriety tests to establish evidence of driving under the influence); *State v. Gleason*, 123 Idaho 62, 844 P.2d 691 (1992); *State v. Superior Court*, 149 Ariz. 269, </proga@dd>718 P.2d 171 (1986) (one of the first cases to hold HGN satisfied *Frye* test). This is not a conclusive listing. Most courts permit the admission of HGN test evidence by arresting officers who have been adequately trained in conducting the test and can show that the test in the particular case at bar was conducted in substantial accordance with that training. The Nebraska Supreme Court recently observed that this was the majority rule and pronounced it sound. *Baue*, 607 N.W.2d at 205.[2] These courts have found that use of HGN testing has gained acceptance in the general scientific community and satisfies both the *Frye*

and *Daubert* tests for admission of scientific evidence.[3]

[¶ 13.] Hullinger argues that the State is "ham-strung" by the testimony of its expert witness, Dr. Menning. This witness testified that HGN shows a correlation to BAC, but gave no further opinion on its proof that a person was "under the influence" of alcohol. The trial court made this finding of fact # 5:

> Based upon the testimony of the State's expert, the HGN test, when correctly administered, indicates the presence of .10 percent of alcohol in the test subject's blood but does not indicate whether a person is under the influence of alcohol.

Our review shows this is a misrepresentation of the testimony. The witness gave *no opinion* whether the person would be under the influence as he did not feel qualified to do so. He did not state that a positive HGN test result, i.e. one in which the defendant fails four of the six points, does not indicate whether a person is under the influence. This mistake of fact by the trial court became the basis for its conclusion. The court believed the difference was significant because Hullinger was charged with driving under the influence in violation of SDCL 32–23–1(2) and not with driving with a BAC of .10 percent or greater in violation of SDCL 32–23–1(1). The court stated it began its analysis of the evidentiary issues with this difference in mind.

---

2. *Baue* is factually similar to Hullinger's case in that Baue failed the PBT and HGN test, but passed an alphabet test, counting backwards test, as well as two additional outside field sobriety tests Hullinger did not take, the one-legged stand and the walk-and-turn tests. 607 N.W.2d at 196.

3. In South Dakota, we adopted the *Daubert* test from *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) in *State v. Hofer*, 512 N.W.2d 482,

484 (S.D.1994) and departed from the former *Frye* rule of *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). "The *Daubert* standard requires the trial court to ensure that an expert's testimony both 'rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.' " *State v. Loftus*, 1997 SD 131, ¶ 21, 573 N.W.2d 167, 173.

[¶ 14.] Regarding the differences between these subdivisions, we recently observed:

> Under SDCL 32–23–1(1) the state merely must prove that a person was driving or in actual physical control of a vehicle with a prohibited blood-alcohol concentration of 0.10 percent. Under SDCL 32–23–1(2), the query is whether the person is 'under the influence of an alcoholic beverage.' We have recognized that this phrase covers 'not only all well known and easily recognized conditions and degrees of intoxication, *but any abnormal mental or physical condition which is the result of indulging in any degree in alcoholic liquor* and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess.' *State v. Masteller*, 86 S.D. 514, 517, 198 N.W.2d 503, 505 (1972); *See* SDPJI 3–10–3. *Intoxication is a temporary disorder which manifests itself with physical symptoms.* 3B Charles J. Frankel, *Lawyers Medical Cyclopedia*, § 17.14(b)(1983). *Under SDCL 32–23–1(2), the focus is on the condition produced by this intoxication* [.]

*State v. Vandergrift*, 1997 SD 5, ¶ 7, 558 N.W.2d 862, 863 (emphasis added); *State v. Gerdes*, 252 N.W.2d 335 (S.D.1977).

[¶ 15.] Hullinger refused to perform outside field sobriety tests or provide a blood draw, however, his PBT registered over .10 percent BAC.[4] Certainly a positive HGN test result, which Dr. Menning testified is an indicator of .10 percent or greater BAC *and which demonstrates physical abnormalities,* is relevant evidence to determine whether a defendant was driving under the influence. "Any evidence tending to connect an accused with the commission of a crime is relevant and probative." *State v. Bunger*, 2001 SD 116, ¶ 10, 633 N.W.2d 606, 609 (citing *State v. Anderson*, 2000 SD 45, ¶ 97, 608 N.W.2d 644, 671). At trial, a defendant would have the opportunity to cross-examine and to present rebuttal evidence, if any, of other reasons for those physical abnormalities apart from alcohol ingestion.[5] The trial court was clearly erroneous in its finding of fact # 5 based on the witness' testimony. Moreover, exclusion of the HGN test results based on the distinction between the two statutory subdivisions "evolves from an erroneous view of the applicable law." *Belmontes, supra; Vandergrift, supra.*

[¶ 16.] The trial court, in findings # 8 and # 9, found that Deputy Ludwig did not have sufficient training or qualifications to administer the HGN test or analyze its results. The record shows Ludwig received six hours of formal training at the Division of Criminal Investigation regarding the HGN test and additional field training by two law enforcement officers. He has been a law enforcement officer since 1995 and has administered the HGN test approximately fifty times along with other standard field sobriety tests. He testified that of those fifty tests, at least thirty persons passed and were not

4. By statute, a .10 percent BAC based on a chemical analysis of blood, breath or other bodily substances gives rise to a presumption of being under the influence. SDCL 32–23–7(3) provides:

> If there was at that time ten hundredths percent or more by weight of alcohol in the defendant's blood, *it shall be presumed that the defendant was under the influence of intoxicating liquor.*

> Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0 cubic centimeters of whole blood *or 2100 cubic centimeters of deep lung breath.* (emphasis added).

5. Dr. Menning testified that approximately 3 percent of the population has nystagmus from other causes.

arrested for violation of SDCL 32–23–1. He also testified that he has not observed anyone fail the test who registered with less than .10 percent BAC. Ludwig explained that the presence of four of six points, or the failure of at least four of the six parts of the test, indicates a BAC level of .10 percent or greater. Here, Hullinger failed each part of the test and scored six points out of six.

[¶ 17.] The trial court's findings that Ludwig did not have sufficient training or experience in administering the test was clearly erroneous, does not comport with the standard for admission of HGN test results in the majority of state court jurisdictions and, in a rural state such as ours, would be problematic in its application. Finding of fact # 9 specifically states that:

> Based upon Deputy Ludwig's testimony and the Court's ability to take judicial notice of the relative experience of arresting officers in Hughes and Stanley Counties in South Dakota, the Court finds that Deputy Ludwig was not highly skilled or experienced in administering and analyzing the results of the HGN test.

[¶ 18.] In a rural area, there are not likely to be an abundance of 20–year veteran officers who have administered the test 1,000 times. Ludwig testified he received six hours of training in HGN testing and analysis at the DCI Academy and received additional field training with two law enforcement officers.[6] He further testified that since 1995 he has conducted the test fifty times. He testified that Hullinger indicated he understood the test before he began and that Hullinger performed the test correctly. The director of training at the DCI Academy, Farnsworth, testified that he has been training officers in HGN testing for five years and trains them according to National Highway Traffic Safety Administration (NHTSA) standards. Although Ludwig may not be "highly skilled or experienced," there was no evidence presented that his training did not comply with NHTSA standards or that his administration of the test on Hullinger was not in accordance with those standards. Some state court jurisdictions that have examined this issue, as noted above, have concluded that HGN evidence is admissible if the officer has been adequately trained to administer the test and the test was administered in accordance with that training. *State v. Zivcic,* 229 Wis.2d 119, 598 N.W.2d 565 (Ct.App.1999); *State v. Taylor,* 694 A.2d 907 (Me.1997) (use limited to evidence to support probable cause to arrest without a warrant or as circumstantial evidence of intoxication); *Schultz v. State,* 106 Md.App. 145, 664 A.2d 60 (1995); *City of Fargo v. McLaughlin,* 512 N.W.2d 700 (N.D.1994); *State v. Murphy,* 451 N.W.2d 154 (Iowa 1990). A minority of jurisdictions require additional foundational evidence regarding the correlation between HGN test results and alcohol impairment. *State v. Helms,* 348 N.C. 578, 504 S.E.2d 293 (N.C.1998) (reversible error without proper foundation); *Murphy,* 953 S.W.2d 200 (test is "scientific, technical or other specialized knowledge" and must be offered through expert witness). This additional foundational evidence was presented to the trial court by an expert witness at the suppression hearing.

■ [¶ 19.] The trial court abused its discretion in excluding this relevant evidence in a prosecution for driving under the influence in violation of SDCL 32–23–1(2). We reverse and remand for proceedings consistent with this opinion. HGN

---

**6.** Compare with officer training in Nebraska as testified to in *Baue,* 607 N.W.2d at 202 (state patrol director of training testified that Nebraska state troopers receive 24 hours of field sobriety test training, of which 12 hours are devoted to HGN testing.)

testing is nationally recognized as a reliable field sobriety test and if it can be shown that the test was properly administered by a trained officer, such evidence should be admitted for a jury to consider at trial along with evidence of the other accepted field sobriety tests administered in this state.

[¶ 20.] SABERS and KONENKAMP, Justices, concur.

[¶ 21.] AMUNDSON, Justice, concurs specially.

[¶ 22.] ZINTER, Justice, disqualified.

AMUNDSON, Justice (concurring specially).

[¶ 23.] The conference opinion concludes, "HGN testing is nationally recognized as a reliable field sobriety test and if it can be shown that the test was properly administered by a trained officer, such evidence should be admitted for a jury to consider at trial along with evidence of the other accepted field sobriety tests administered in this state." I do not disagree that once the proper evidentiary hoops have been cleared, HGN tests can be admitted into evidence, but I do believe it is important to ensure that they are properly admitted.

[¶ 24.] Most courts treat HGN tests as scientific evidence, rather than common knowledge, and require presentation of a proper foundation before admission, and we should do the same. *See State v. Witte*, 251 Kan. 313, 836 P.2d 1110, 1115 (1992). Although not all field sobriety tests are treated as scientific evidence, HGN tests should be. "The relationship between the effects of alcohol on the central nervous system, the nystagmus phenomenon, and the HGN test is not within the realm of common knowledge of the average person. Other field sobriety tests, such as the walk-and-turn test, the one-leg-stand test,

and the modified finger-to-nose test, obtain their legitimacy from effects of intoxication based on propositions of common knowledge." *State v. O'Key*, 321 Or. 285, 899 P.2d 663, 675 (1995) (internal citation omitted). The common knowledge being "that excessive alcohol can cause coordination, balance, and mental agility problems." *State v. Doriguzzi*, 334 N.J.Super. 530, 760 A.2d 336, 340 (N.J.Super.Ct.App.Div.2000) (holding HGN test is scientific and must meet *Frye* standards). The correlation between the amount of alcohol a person consumes and the angle of the onset of the nystagmus is not mere common knowledge. Although no special equipment is required to administer the HGN test, and the procedure of holding an object a certain distance from the eye and judging certain angles and eye responses does not sound technical, the underlying principle of correlating alcohol consumption to nystagmus is technical.

[¶ 25.] Furthermore, there is still disagreement about the appropriate angle for the onset of nystagmus, the accuracy of the test, other causes of nystagmus, and the effect of the body's circadian rhythm on nystagmus. *Witte*, 836 P.2d at 1119–20. One court noted:

> The arresting officer's 'reading' of the HGN test cannot be verified or duplicated by an independent party.... The test's recognized margin of error provides problems as to criminal convictions[,] which require proof of guilt beyond a reasonable doubt. The circumstances under which the test is administered at roadside may affect the reliability of the test results. Nystagmus may be caused by conditions other than alcohol intoxication....

*Faires v. State*, 711 So.2d 597, 598 (Fla. App.1998). Therefore, there is not a clear acceptance of the test across the board,

which is what the conference opinion indicates.

[¶ 26.] I believe we should ensure that witnesses who testify about the HGN test are properly qualified. The *Daubert* test should be used to ensure "the proponent offering expert testimony must show that the expert's theory or method qualifies as scientific, technical, or specialized knowledge under SDCL 19–15–2[.]" *State v. Guthrie*, 2001 SD 61, ¶ 34, 627 N.W.2d 401, 415–16. *See also O'Key*, 321 Or. 285, 899 P.2d 663 (treating HGN as scientific evidence and applying the *Daubert* test). *Cf. Witte*, 836 P.2d at 1115 (noting that the majority of jurisdictions still apply the *Frye* foundation and citing numerous cases utilizing *Frye* to analyze HGN tests). One court stated that the HGN test

> rests on scientific premises well beyond [the officer's] knowledge, training, or education. Without some understanding of the processes by which alcohol ingestion produces nystagmus, how strong the correlation is, how other possible causes might be masked, what margin of error has been shown in statistical survey, and a host of other relevant factors, [the officer's] opinion on causation, notwithstanding his ability to recognize the symptom, was unfounded.

*Id.* at 1115–16 (citation omitted). Thus, officers who do not have a scientific background to adequately explain nystagmus causation should not be allowed to testify to its causation; rather, they should have their testimony limited to observations only.

[¶ 27.] Clearly, "the party seeking to admit the results of the HGN test [should be] required to establish the foundation for admission of scientific evidence...." *Commonwealth v. Apollo*, 412 Pa.Super. 453, 603 A.2d 1023, 1026 (1992) (holding trial court did not abuse its discretion by precluding admission of HGN evidence). Unless the arresting officers or other individuals who administer the HGN test possess the appropriate training, knowledge and experience, they should not be allowed to testify about administration of the test. And, unless a witness is properly educated on the science of HGN, he should not testify about the physiology of the test. Finally, because of the discrepancies concerning the accuracy of the test, I do not believe HGN tests should be used to prove a particular blood alcohol content. *See O'Key*, 899 P.2d at 681 (stating HGN tests are not admissible to prove a person has a blood alcohol content of .08 or more); *Williams v. State*, 710 So.2d 24 (Fla.Dist. Ct.App.1998) (holding HGN alone cannot be used to prove blood alcohol content of .08%).

[¶ 28.] For the foregoing reasons, I would hold a blanket acceptance of HGN testimony by the officer administering the test goes too far. The officer's testimony should be limited to his observations as made when giving the test pursuant to his training.