Argued and submitted July 31, 1992, reversed and remanded September 22, 1993

## STATE OF OREGON,
*Appellant,*

*v.*

## CONTRERO FARIAS MENDOZA,
aka Milo Ruiz Mendoza,
aka Milo Ruizmendosa,
aka Maris S. Soto,
*Respondent.*

(C91-08-33864; CA A72112)

858 P2d 1350

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Diane Alessi, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender, Salem.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

RICHARDSON, C. J.

## RICHARDSON, C. J.

Defendant was charged with delivery and possession of a controlled substance. ORS 475.992. The state appeals an order, made before trial, suppressing drugs and money seized from defendant's person. ORS 138.060(3). It argues that the police officers had probable cause to arrest defendant and that the resulting search incident to the arrest was lawful. We reverse.

The evidence presented by the state on defendant's motion was undisputed and consisted of the testimony of one police officer. Defendant offered no evidence and the court made only cursory findings.

Officers Butler and Coffman were on bicycle patrol in the Old Town district of Portland on an August afternoon. They left their bicycles and went to the roof of a building to conduct surveillance of the street. From the roof, they saw defendant, a Hispanic male, and a woman named Reed on the sidewalk directly across the street from the building where the officers were. Another woman, Patel, approached defendant and Reed and spoke to them. Coffman testified that he could not hear the conversation but described the conduct of Reed as appearing to translate a conversation between Patel and defendant. Patel, after talking to Reed, showed defendant some currency and the three of them moved over to the wall of a building. Defendant and Patel squatted next to each other with their backs against the wall. Reed stood in front of them but closer to the street and looked nervously in both directions. Coffman testified that Reed appeared to be acting as a lookout. Coffman then saw what he described as a

"real clear exchange, a hand-to-hand exchange of this money for a small, light colored package that the defendant gave Ms. Patel."

Patel stood up and examined the item she had received by holding it flat in her opened hand. She looked at it for about five seconds, put it in her pocket and walked away. The officers retrieved their bicycles and followed in the direction that Patel had gone. They located her in a tavern about three to five minutes later. They arrested her and conducted a cursory search, but did not find the item that she had received from defendant.

The officers went back near the area where they had seen the exchange and arrested defendant and Reed. They searched defendant and found seven packets of cocaine and $74. About ten minutes had elapsed from the time the officers witnessed the transaction between defendant and Patel.

Coffman testified that he had been a police officer for 18 years, had worked in the downtown area for 11 years and the last two years his area of patrol had been the Old Town district. He testified that the area where he saw defendant was a heavy narcotic traffic area, that he had observed many drug transactions and that most of them involved hand-to-hand exchanges on the street.

Coffman testified that the transactions involved mostly cocaine and heroin, which were packaged in clear plastic wrappers tied off or burned at the end. A typical single user amount sold weighed about a sixteenth of an ounce and the package was "about the size of the tip of your little finger." He also testified that the item he saw Patel get from defendant looked like the drug packets that he had seen in the Old Town area.

The exchange he observed between defendant and Patel, Coffman said, fit the common pattern that he had observed in the Old Town area. The trial court said:

"I think it is clear that you have got in the evidence, that this officer has testified he's experienced, that he's observed many transactions in Old Town. This is a classic hand-to-hand deal.

"I will say, for the record, that everybody knows, at least in this community, that Old Town is the major source of dealing by Hispanics for both chiva, heroin, and cocaine."

The trial court granted defendant's motion to suppress the drugs and cash seized from defendant on the basis of its reading of *State v. Norman*, 66 Or App 443, 674 P2d 626, *rev den* 296 Or 712 (1984). In *Norman*, the officer saw the defendant and another man talking in front of a tavern which was known as a meeting place for drug dealers and users. The officer saw the defendant hand money to the other man who placed "something" in the defendant's hand. When the two men saw the officer, they walked rapidly toward the tavern and did not stop when the officer ordered them to do so. The

officer arrested the defendant, searched him incident to the arrest and found some heroin on his person. The defendant agreed that, if there was probable cause to arrest him, the search was valid. We held that the circumstances of the transaction, the location and the officer's experience gave him at least a reasonable, articulable basis for *stopping* the defendant under ORS 131.615. When the two men failed to obey the officer's order to stop, that gave him probable cause to arrest the defendant.

In this case, the trial court concluded that, as in *Norman*, the officers had a reasonable suspicion, sufficient under ORS 131.615, to stop defendant but, because there were no other suspicious factors beyond the transaction between defendant and Patel, they did not have probable cause for the arrest.

ORS 131.005(11) provides:

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

The question of probable cause to support an arrest is determined on an *ad hoc* basis because of the diversity of factual combinations. *State v. Cole/Hood*, 87 Or App 93, 741 P2d 525, *rev den* 304 Or 280 (1987). We look at the totality of the facts and circumstances, not isolated facts. Acts that might be viewed as innocent or equivocal to a lay person may be incriminating when viewed by a trained, experienced police officer.

We did not hold in *Norman* that when an officer saw what appeared to be a drug transaction, that constituted only a reasonable suspicion to make a stop. There is no basis in *Norman* for a negative inference that there must be some suspicious activity beyond the drug transaction in order to have a probable cause basis for the arrest. In *Norman*, the first inquiry was whether the officer's order for the defendant to stop was lawful, *i.e.*, was there a reasonable suspicion to support a stop. There was at least a basis for a stop under ORS 131.615(1). We did not hold that the circumstances at that time supported *only* a stop but not an arrest. The arrest came after the defendant had refused to stop, and that became part

of the circumstances that supported probable cause to make the arrest. What the officers saw, in the light of their experience, looked like a classic hand-to-hand drug transaction, even though they did not see what was exchanged by the two men. The defendant's conduct, in attempting to flee from the officers, confirmed that what the officers saw was an illegal drug transaction.

In this case, the officers not only saw the exchange of money for "something," but also saw what Patel had received from defendant; a small, light colored packet that was consistent with the size, color and packaging of illegal drugs sold on the street in Old Town. The officers saw what their experience told them was a drug transaction. That was probable cause to arrest defendant and the search incident to the arrest was lawful.

Reversed and remanded.