Argued and submitted February 10, reversed and remanded September 1, 2004

# STATE OF OREGON,
*Appellant,*

*v.*

# JACK BENJAMINE VANTRESS,
*Respondent.*

## 01-7172; A118336

96 P3d 867

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Andy Simrin argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, reckless driving, ORS 811.140, and two counts of recklessly endangering another person, ORS 163.195. The state appeals an order granting defendant's motion to suppress evidence resulting from defendant's arrest. ORS 138.060(1)(c). We reverse and remand.

In December 2001, Deputy Matthew Kelly of the Tillamook County Sheriff's Office was dispatched to a two-car accident on the highway south of Tillamook. When Kelly arrived at the scene, fire department personnel directed him to defendant, indicating to him that defendant had been involved in the accident. The weather was cold, windy, and rainy at the scene. Defendant was wet from the rain as well as from being immersed in water from the stomach area down as a result of the accident. Kelly observed that defendant walked with a limp due to an apparent disability. Kelly approached defendant and asked him if he had been injured or if he was in need of an ambulance. Defendant responded that he had not been injured and did not require an ambulance. He acknowledged to Kelly that he was one of the drivers involved in the accident. Kelly testified that he "could smell a strong odor of alcoholic beverage coming from" defendant. Kelly also testified that he observed that defendant's "eyes were bloodshot and watery and that his speech was slurred[.]"[1] Kelly asked defendant for his driver's license and proof of insurance. Defendant had difficulty as he attempted to retrieve the documents, and Kelly "noticed that he was fumbling with them." Kelly then asked defendant how much he had had to drink that evening, and defendant said "nothing." Kelly told defendant that he could smell alcohol coming from him, and defendant then stated that he had had a beer earlier while golfing. During their conversation, Kelly testified that he observed that defendant's movements were slow

---

[1] At the hearing, Kelly could not recall which words defendant had allegedly slurred, and he had not recorded defendant's conversation with a tape recorder that Kelly had in his patrol car. As a result, in its assessment of whether there was objectively reasonable probable cause to arrest defendant, the trial court did not consider Kelly's testimony regarding defendant's alleged slurring.

and that defendant repeatedly leaned into Kelly. Kelly stated that, throughout the conversation, he felt as if he was going to have to catch defendant as a result of his continual leaning and, therefore, asked defendant to lean against a nearby fire truck to steady himself. Defendant repeatedly moved away from the truck during their conversation and began leaning into Kelly, and, thus, Kelly several times asked defendant to steady himself on the truck. Kelly testified that defendant's leaning conduct was "pretty common with intoxicated drivers" in his experience as an officer.

Kelly then asked defendant to take some field sobriety tests, and defendant refused. Kelly read to defendant a field sobriety test "admonishment" card advising him that the tests involved physical actions and that the results could be used against defendant in court. Defendant continued to refuse to take the tests. At that point, Kelly arrested defendant for DUII. The arrest occurred approximately 15 minutes after Kelly had initially approached defendant after the accident. Before asking him to perform the field sobriety tests, Kelly had determined that he had probable cause to arrest defendant for DUII based on his initial observations of defendant's condition and conduct. Kelly testified that, in making that determination, he did not take into account either defendant's refusal to perform the field sobriety tests or what had occurred with regard to the accident. The deputy did, however, testify that he was aware of and took into account defendant's limp as attributable to a disability in his assessment of defendant's condition. Despite that fact, he concluded that defendant's slow movements and his impaired balance were indicia of intoxication and that those characteristics were not merely attributable to defendant's disability or to the weather conditions.

At the hearing on the motion to suppress, defendant contended that the apparent indicia of intoxication had noncriminal explanations. Defendant does not have a hip socket on his right side due to an injury received during military service. As a result, his right leg is several inches shorter than his left leg, he wears a shoe on his right foot that is built up, and he walks with a limp.[2] Defendant testified that he

---

[2] Although Kelly testified that he was aware of defendant's limp, he had not noticed defendant's built-up shoe.

has trouble with his balance, which causes him to lean or stumble. Defendant also testified that, at the time of the accident, he drove off the highway to avoid an oncoming car in his lane and that when his car stopped it was straddling a creek or ditch. When he got out of his car, he landed in very cold water. He testified that he had difficulty retrieving his license and insurance card to give to Kelly because his hands were cold and wet, noting that the insurance card was particularly difficult to retrieve because the card was thin and not plastic-coated. Additionally, because it was raining at the time, defendant asserted that his eyes appeared watery because his face was wet from the rain, as opposed to appearing watery due to intoxication. Later, at the jail, defendant noticed that one of his eyes was red and swollen from being hit against the steering wheel of his car during the accident. Although defendant had told Kelly that he was not injured in the accident, defendant testified that his impact explained the redness that Kelly observed in defendant's eyes.

The court granted defendant's motion to suppress. In its letter opinion, the trial court considered the "information the officer knew at the time, as well as the circumstances of * * * defendant's situation." (Footnote omitted.) The court noted that, in making the determination of probable cause, Kelly had not relied on defendant's refusal to take the field sobriety tests or the crash itself, nor had he considered any driving activity. The court then considered the noncriminal explanations for Kelly's observations:

"What is left and what I conclude are objective factors in a probable cause analysis are the following: it was dark, cold, stormy, and raining heavily. The defendant was soaking wet, and was substantially chilled by the rain, being immersed in the creek, and blown by the wind. His eye had been injured and was red. He walked with a substantial limp from a war injury, which can be easily perceived as a stagger. He smelled of alcoholic beverage. He had difficulty in retrieving his driver's license and his insurance card, in part, at least, due to the fact his wallet and his documents were soaking wet, it was dark, windy, and rainy, and, perhaps, because he was intoxicated. Objectively, I cannot determine that his speech was slurred as the officer could not identify what aspect of his speech was slurred, and as it

was windy at the time. The officer had a tape recorder available but did not utilize that technology. Thus, the State's evidence of slurred speech here is not substantial, and I do not consider slurred speech as a factor in determining objective probable cause.

"While part of the defendant's difficulty in retrieving his papers may have been due to being affected by alcohol to a perceptible degree, I cannot say, more likely than not, that there is objective probable cause to conclude the defendant's arrest was justified, in this fact situation. Here, there is no driving conduct, and most of the other typical factors in determining probable cause for DUII are substantially and rationally explained by the weather and defendant's physical condition at the time."

In a subsequent letter in response to the prosecution's request for clarification on the court's ruling, the court stated that it found Kelly's testimony to be credible but noted that, in absence of the deputy's consideration of defendant's driving,

"[w]hat is left, and including the defendant's explanations of some of his actions and appearances, and also including the likelihood that he had been drinking, the sum total of all those factors, objectively, is, more likely than not, there is not probable cause that [defendant] was *driving* under the influence of an intoxicant at the time.

"* * * * *

"I also don't believe that, given the totality of all the circumstances presented to me by both Deputy Kelly and by [defendant], that one can objectively conclude that [defendant] was under the influence of an intoxicant at the time of his interview. Certainly, [defendant] had been drinking, but some of his explanations for his behavior and actions 'subtract' from factors used by Deputy Kelly in making a subjective conclusion that he was under the influence."

(Emphasis in original.) After noting that it could not consider either the accident or defendant's refusal to take the field sobriety tests, the court concluded:

"I am left with what the defendant said, did, and how he appeared to Deputy Kelly. *At the hearing, [defendant] provided me with information Deputy Kelly didn't have, and some of that information gave me a rational explanation for*

*what Deputy Kelly observed, and 'explained away' many of the factors that led Deputy Kelly to believe [defendant] was DUII."*

(Emphasis added.)

On appeal, the state assigns error to the trial court's suppression order, asserting that it was incorrect in its determination that the officer's belief that there was probable cause to arrest defendant was not objectively reasonable. We review for errors of law to determine whether the circumstances objectively presented the officer with probable cause to arrest. ORS 138.220; *State v. Nagel*, 320 Or 24, 33, 880 P2d 541 (1994). In reviewing the suppression order, we are bound by the trial court's findings of historical fact if they are supported by evidence in the record. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). If the trial court failed to make findings on particular issues, we presume that it decided the facts in a manner consistent with its ultimate conclusion. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

■ Probable cause to arrest requires that "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11). That rule requires that the officer subjectively believe that a crime has been committed and that that belief is objectively reasonable in the circumstances. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Therefore, to establish that Kelly had probable cause to arrest defendant for DUII, the state had to show that, before the arrest, Kelly subjectively believed that it was more likely than not that defendant was perceptibly impaired due to the consumption of alcohol while driving and that that belief was objectively reasonable. *See State v. Spruill*, 151 Or App 87, 90-91, 948 P2d 726 (1997) (citing ORS 813.010). The parties do not contest that Kelly held the requisite subjective belief. Therefore, the only issue presented is whether that belief was objectively reasonable.

■■ In determining whether an officer's belief is objectively reasonable,

"[w]e look at the totality of the facts and circumstances, not isolated facts. Acts that might be viewed as innocent or

equivocal to a lay person may be incriminating when viewed by a trained, experienced police officer."

*State v. Mendoza*, 123 Or App 237, 241, 858 P2d 1350 (1993). As stated, the court found Kelly's testimony credible. Kelly made the following observations: (1) There was a strong odor of alcohol coming from defendant, and defendant initially denied drinking but later admitted to having had a beer earlier in the day; (2) his eyes appeared watery and bloodshot; (3) his movements were slow; (4) he continuously leaned into Kelly; and (5) he fumbled with and had difficulty removing his license and insurance card from his wallet.

■     The trial court based its decision on defendant's alternative, exculpating explanations for Kelly's observations. The trial court stated that defendant's testimony provided information not available to Kelly at the time of his probable cause determination that " 'explained away' many of the factors that led Deputy Kelly to believe [defendant] was DUII." Whether the officer's subjective and objectively reasonable belief is later validated as correct is irrelevant. *State v. Esplin*, 314 Or 296, 304-05, 839 P2d 211 (1992). Similarly, an officer is not required to eliminate alternative explanations to indicia of intoxication before concluding that there is probable cause to arrest. In *Spruill*, 151 Or App at 92, we explained that,

> "[a]lthough there may have been other plausible explanations for defendant's behavior, [the officer] was not required to consider and eliminate those possible explanations before concluding that that behavior, in combination with the odor of alcohol on defendant's breath and his admission of drinking for five hours, gave rise to probable cause that defendant was driving under the influence of intoxicants. *See State v. Gilmour*, 136 Or App 294, 300 n 7, 901 P2d 894, *rev den*[,] 322 Or 360, 907 P2d 247 (1995)."

Although defendant's noncriminal explanations for the apparent indicia of intoxication may undermine the state's claim in a trial on the merits that defendant was *actually under the influence*, they do not operate to make Kelly's

determination at the scene of the accident objectively unreasonable. When a person exhibiting defendant's physical characteristics has a strong odor of alcohol on his breath and continuously leans into the person with whom he is conversing, a trained, experienced police officer could reasonably believe that it is more likely than not that the person is under the influence of alcoholic beverages. For the above reasons, we conclude that the trial court erred in determining that Kelly did not have objectively reasonable probable cause to believe that defendant had been driving while under the influence.

In his brief, defendant "cross-assigns" error to the court's failure to conclude that Kelly made an unlawful stop of defendant when he initially encountered him at the scene of the accident. Although defendant's argument is a "right for the wrong reason argument" as opposed to a cross-assignment of error, *see* ORAP 5.57, we reject defendant's argument on its merits without discussion.

Reversed and remanded.