Submitted October 31, affirmed December 12, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GREGORY ALLEN BECK,
*Defendant-Appellant.*

Marion County Circuit Court
09C42378; A146280

292 P3d 653

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals a conviction, following a trial to the court, for driving while under the influence of intoxicants (DUII). ORS 813.010. Defendant assigns error to (1) the trial court's denial of his motion *in limine* to exclude evidence of his marijuana consumption and its effects and (2) the court's denial of his motion for a judgment of acquittal on the ground that there was insufficient evidence that he operated his vehicle under the influence of a controlled substance. We reject the latter challenge with limited discussion, and we conclude that the court did not err in admitting the evidence concerning his marijuana use and its effects. Accordingly, we affirm.

Marion County Sheriff's Deputy Clarke is a trained and certified drug recognition expert (DRE) who has conducted hundreds of DUII investigations. On April 9, 2009, Clarke was on patrol near State Street and Lancaster Drive in Salem. At about 1:00 a.m., Clarke saw a vehicle leave the parking lot of a tavern and turn west onto State Street, crossing a median curb placed there to keep cars from turning in that direction. Clarke followed the vehicle and pulled it over in the parking lot of a business a few blocks away. Clarke introduced himself to defendant, who was the driver. Clarke smelled a "light" odor of alcohol and noticed that defendant's eyes were bloodshot, watery, and that he had droopy eyelids. Defendant also had dexterity problems; it took a few attempts before he was able to retrieve his license and registration and present them to Clarke. Defendant presented an Oregon identification card rather than a driver's license and told Clarke that his license was suspended for a previous DUII. He also told Clarke that "he had a couple drinks while at the bar." When he checked defendant's driving status, Clarke learned that defendant's license was suspended and that he was required to have an ignition interlock device on his vehicle.

At that point, Clarke asked defendant to perform field sobriety tests (FSTs). Defendant agreed, and after asking him some medical history questions, Clarke administered the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, the one-leg stand test, and the modified Romberg

internal clock test. Clarke did not complete the HGN test, but he nevertheless noted nystagmus in both of defendant's eyes. Clarke also noticed that defendant's pupils appeared to be dilated. On the walk-and-turn test, defendant exhibited two out of eight possible clues for impairment. On the one-leg stand, defendant exhibited one clue—a side-to-side sway—out of four possible clues for impairment. On the modified Romberg test—wherein the officer has the subject tilt his head back with closed eyes and estimate the passing of a certain amount of time—defendant estimated 34 seconds during what was actually 30 seconds. Clarke characterized defendant's performance as "passing" on the one-leg stand, and stated that defendant's modified Romberg performance was "within normal ranges." During both the one-leg stand and the walk-and-turn tests, Clarke observed that defendant had leg tremors. Clarke testified that leg tremors can be an indication of use of a controlled substance in addition to alcohol.

During the modified Romberg test, defendant's eyelids trembled. Clarke stated that eyelid tremors also can signify the presence of a controlled substance other than alcohol. While still at the scene of the stop, Clarke measured defendant's pupils using a "pupilometer," and found that both pupils were "dilated for the lighting conditions." Clarke asked defendant to open his mouth and saw "raised taste buds near the back of his tongue[,]" which Clarke knew to be an indicator of possible marijuana consumption. Defendant told Clarke that he had smoked marijuana the night before. Based on his training and experience, Clarke knew that a person could still be under the influence of marijuana 24 hours after smoking it.

Clarke arrested defendant for DUII and driving while suspended (DWS). A breath test administered at the jail showed that defendant's blood alcohol content (BAC) was 0.10. According to Clarke, if a subject's BAC on a breath test is higher than 0.08, a DRE does not conduct a DRE evaluation. Therefore, Clarke did not perform a DRE evaluation on defendant.

Defendant was charged by amended information with DUII under ORS 813.010(1)(c), and DWS, ORS 811.175. Before trial, defendant moved *in limine* to exclude

all evidence that Clarke might give concerning defendant's marijuana consumption and its effects. Defendant argued that the foundation for Clarke's testimony was inadequate because he had not conducted a complete DRE evaluation of defendant, and the observations that he made were at the roadside and not in the controlled setting required by the DRE protocol. Relying on *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), defendant argued that, in the absence of a completed DRE, the physiological signs that Clarke observed in this case were not signs of controlled substance intoxication usually recognized or understood by most people, but rather, constituted scientific evidence that could not properly be admitted solely on the basis of an officer's "training and experience." In sum, defendant asserted that the marijuana-related evidence was inadmissible to show that defendant was under the influence of a controlled substance because it misleadingly conveyed the stature of an approved scientific methodology in that the methodology had not been completed.

The trial court took defendant's motion under advisement, indicating that it would "make a decision as to what [it could] consider and what [it could not] and let the parties know what [its] decision [was] and go from there." In the ensuing bench trial, the state adduced Clarke's testimony described above. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the ground that the evidence was insufficient to show that he had operated his vehicle under the influence of a controlled substance. Although defendant did not challenge the sufficiency of the state's evidence that he had driven under the influence of alcohol, he asserted that, because the state had pleaded the charge as a "combination" DUII under ORS 813.010(1)(c), it was required, but had failed, to show that marijuana use had contributed to his alcohol intoxication. The trial court denied defendant's motion for a judgment of acquittal. At the close of evidence, the trial court took the case under advisement and indicated that it would announce its decision on the motion *in limine* when it rendered its verdict.

In a letter opinion, the trial court found defendant guilty of both charged offenses. In support of its verdict, the

trial court enumerated 28 findings of fact. In particular, defendant focuses on the following findings that the court made:

"15. Clarke observed tremors in defendant's lead leg while he was standing and that the pupils of defendant's eyes were dilated.

"16. Clarke testified that based on his law enforcement training, education, and experience, leg tremors and dilated pupils are 'indicators' of possible consumption of a controlled substance.

"* * * * *

"18. Clarke observed additional eyelid tremors during the Romberg field sobriety testing and noted that the taste buds on the back of defendant's tongue were raised.

"19. Based on Clarke's training and experience, raise[d] buds are an indicator of cannabis consumption.

"20. Clarke asked defendant if he had used marijuana, to which defendant responded 'not tonight,' but that he had used marijuana the day before.

"20. [sic] Clarke * * * testified that it is possible for a person to still be under the influence of the controlled substance marijuana 24 hours after consumption.

"* * * * *

"24. Although he is certified as a DRE, Deputy Clarke did not conduct a DRE evaluation, reach a DRE conclusion, or offer a DRE opinion.

"* * * * *

"27. The evidence establishes that defendant was driving under the influence of alcohol and a controlled substance (marijuana).

"28. The evidence is insufficient to establish that defendant was driving under the influence of marijuana, alone."

The trial court also made the following pertinent findings of fact, to which defendant does not refer:

"22. Testing of defendant's breath revealed a .10% blood alcohol level about one hour and 6 minutes after the stop.

"* * * * *

"26.   The evidence establishes that defendant was driving under the influence of alcohol."

To place defendant's arguments on appeal in proper perspective, we first consider the nature of the DUII charge in this case. As noted, the amended information charged defendant with DUII under ORS 813.010(1)(c), which provides that a person commits that offense if the person drives while "under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance." Where the evidence is sufficient to establish that the defendant drove while impaired, and the defendant admitted the recent use of both alcohol and a controlled substance, a trier of fact can find that the defendant was under the combined influence of alcohol and a controlled substance without additional evidence that ingestion of the controlled substance caused the defendant's impairment. *See State v. Harmon*, 239 Or App 587, 592, 244 P3d 910 (2010), *rev den*, 349 Or 654 (2011) (rejecting the defendant's argument that, to prove a combined alcohol-controlled substance DUII, the state must adduce "additional evidence of causation beyond the evidence of his admissions and impairment[]").

By contrast, when a charging instrument alleges that the defendant has driven solely under the influence of a controlled substance under ORS 813.010(1)(b), it is necessary to establish that the influence of the controlled substance alone unlawfully impaired the defendant's operation of his or her vehicle. In such circumstances, it is common for the state to introduce evidence of impairment through DRE evidence. *See State v. Sampson*, 167 Or App 489, 491, 6 P3d 543, *rev den*, 331 Or 361 (2000) (describing the DRE protocol as "a 12-step procedure performed by a trained officer that purports to determine whether a subject is under the influence of a controlled substance").[1]

---

[1] Those steps are:

"1. A blood alcohol content (BAC) analysis is done. If the subject's BAC exceeds 0.08 percent, the DRE protocol ends.

"2. The DRE officer interviews the arresting officer to information about the subject's behavioral and physical symptoms.

"3. The DRE officer conducts a preliminary physical examination: he or she checks the subject's eyes for synchronization and pupil size, checks the pulse, and asks general health questions. This step determines whether the subject is impaired by a medical condition.

In *Sampson*, we concluded that the procedure and results of the DRE protocol are admissible as scientific evidence in a DUII-controlled substance prosecution to show that a defendant was under the influence of a controlled substance. 167 Or App at 512. We noted, however, that the state still must establish, in each case, that the DRE officer was properly qualified to administer the protocol, that the officer administered it properly, and that the results were accurately recorded. *Id.* The admissibility of the complete DRE protocol as scientific evidence does not demonstrate the general admissibility of each component of the protocol. Rather, "in *Sampson*, we approved the 12-step DRE protocol as scientific evidence because its complete administration by a competent examiner qualified for admission as scientific evidence * * *." *State v. Aman*, 194 Or App 463, 472, 95 P3d 244 (2004), *rev dismissed as improvidently allowed*, 339 Or 281 (2005). Further, in *Aman*, we concluded that an incompletely administered DRE protocol is not admissible as scientific evidence, although we noted that evidence of individual components of the DRE protocol were not necessarily inadmissible as nonscientific evidence of impairment. *Id.* at 473; *see also State v. Hernandez*, 227

"4. The DRE officer conducts four standard eye examinations developed to detect intoxication: horizontal gaze nystagmus (HGN), vertical gaze nystagmus (VGN), and lack of convergence (LOC).

"5. The DRE officer conducts four FSTs [field sobriety tests]: the Romberg balance test, the walk and turn test, the one leg stand test, and the finger to nose test.

"6. The DRE officer checks the subject's pulse, blood pressure, and body temperature.

"7. The DRE officer measures the subject's pupil size under three light conditions (near total darkness, indirect light, and direct light), and inspects the nose and mouth for signs of drug ingestion.

"8. The DRE officer checks the subject's muscle tone for extreme flaccidity or rigidity.

"9. The DRE officer inspects for injection sites.

"10. The DRE officer conducts a focused interrogation and observation of the subject's behavior.

"11. Considering the results of all the foregoing procedures, the DRE officer develops a formal opinion identifying the drug that the subject took.

"12. The DRE officer obtains a urine sample for toxicological testing. The test is used to corroborate the DRE officer's opinion and to provide a learning tool for the officer."

*State v. Rambo*, 250 Or App 186, 190-91, 279 P3d 361 (2012).

Or App 319, 324, 206 P3d 197 (2009) (rejecting the state's argument that individual components of an incomplete DRE protocol were admissible as nonscientific expert evidence where the state failed to identify which of the protocol were nonscientific).

The state's theory in this case was that defendant was guilty of operating his vehicle under the influence of alcohol and that, at least to some extent, his use of marijuana had contributed to his impairment. Thus, at trial, the state's primary focus was on evidence pertaining to defendant's alcohol intoxication. As noted, although Clarke was a trained DRE, he explained that had not completed the full DRE protocols after defendant's BAC was measured at .10 on the breath test. Likewise, Clarke did not testify that defendant had operated his vehicle under the influence of a controlled substance, although he did opine that defendant had operated his vehicle while intoxicated. In short, the state's theory was that defendant had operated his vehicle while under the influence of alcohol and that his ingestion of marijuana in the previous 24 hours had materially contributed to the extent of his intoxication. *See, e.g., State v. Stiles*, 165 Or App 584, 594, 998 P2d 703 (2000) ("[T]he phrase 'being under the influence of a controlled substance,' as used in ORS 813.010(2), necessarily encompasses all cases in which the state contends that the defendant's use of a controlled substance materially contributed to culpable impairment.").

The evidence regarding defendant's consumption of marijuana and its effects was tailored accordingly. That evidence showed that, while Clarke was investigating defendant for DUII, defendant exhibited several indicators of impairment by a controlled substance. Defendant's pupils were dilated, his leg trembled during field-sobriety tests, and his eyelids trembled—all signs, according to Clarke—of impairment that are unexpected when a person is solely under the influence of alcohol. Because of his training and experience in recognizing the signs of controlled-substance use, Clarke suspected that defendant had used marijuana. Clarke asked defendant to open his mouth; defendant complied, and Clarke saw that defendant's taste buds

were raised on the back of his tongue, which Clarke also recognized as consistent with marijuana use. Based on those indicators, Clarke asked defendant whether he had used marijuana, and defendant admitted that he had used it the night before. Clarke testified that, based on his training and experience, the effects of marijuana can persist for 24 hours.[2] That array of evidence was sufficient to submit the combination alcohol-marijuana DUII theory to the trier of fact under *Harmon*. Thus, if that evidence was admissible, it was sufficient to defeat defendant's challenge to the denial of his motion for judgment of acquittal.[3]

For two reasons, we reject defendant's challenge to the marijuana evidence as inadmissible scientific evidence. First, at least some of the evidence was nonscientific expert opinion evidence that was admissible under OEC 702. Under that rule, where "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." In *State v. Rambo*, 250 Or App 186, 279 P3d 361 (2012), we held that, where a DRE protocol was not completed, an investigating officer nevertheless could opine, based on his or her expertise, that the defendant was under the influence of a controlled substance based on the defendant's performance of tests that—although also included in the DRE protocol—do not improperly convey that they were conducted as part of an approved scientific methodology. So, for example, in *Rambo*, we upheld the trial court's admission of such opinion testimony based on evidence "relating to [the] defendant's blood alcohol content, her statements, the HGN test, her performance on the field

---

[2] For the first time on appeal, defendant asserts that Clarke "was not properly qualified as an expert." However, defendant did not object before the trial court to Clarke's qualifications to testify as an expert in this case, either generally, or in particular with reference to his testimony about the persistence of the effects of marijuana. Accordingly, we reject that unpreserved argument without further discussion.

[3] Because, as explained below, the challenged evidence was admissible, we reject defendant's challenge to the denial of his motion for a judgment of acquittal without further discussion.

sobriety tests, her pupil size, and the needle injection sites on her body." *Id.* at 189.[4]

Echoing defendant's argument here, in *Rambo*, the defendant had argued that, "[e]ven if there were mixed scientific and nonscientific components, the end result is that [the officer] was integrating scientific tests to form a larger scientific conclusion, giving the imprimatur of science to his opinion when his opinion has not been established as scientific absent a urinalysis." *Id.* at 193. Our reasoning in rejecting that argument informs our analysis in this case:

"In *Aman*, the vice of admitting opinion evidence of an incompletely administered DRE protocol was that the DRE officer not only had testified at length about his training and experience, he also testified at length about the 'details of the 12-step protocol.' *Aman*, 194 Or App at 471. In contrast, here, the evidence showed that [the officer] was qualified, by virtue of considerable training and experience, to recognize the symptoms of drug impairment in the course of a DUII investigation. Based on such training and experience, police officers can—and frequently do—testify as to their opinions of whether an individual was under the influence of alcohol or a controlled substance. *See, e.g., State v. Chatelain*, 347 Or 278, 281, 220 P3d 41 (2009) ('[O]ne of the arresting officers testified that defendant "show[ed] all the classic signs of [being under the influence of] some sort of stimulant": he "was real fidgety," seemed "really, really, extremely anxious," and "couldn't stop messing with his clothes."'); *State v. Moore*, 334 Or 328, 332, 49 P3d 785 (2002) (officer 'testified that, when he arrived at the scene, defendant was intoxicated'); *State v. Vantress*, 195 Or App 52, 55, 96 P3d 867 (2004) (officer 'testified that defendant's leaning conduct was "pretty common with intoxicated drivers" in his experience as an officer'); *State v. Kimsey*, 182 Or App 193, 196, 47 P3d 916 (2002) (officer testified that defendant 'seemed to be intoxicated'). The fact that they may rely in part on independently admissible scientific evidence, such as blood alcohol content and HGN test results, to reinforce

---

[4] In so concluding, we noted that the results of some of those tests, including the HGN and blood alcohol tests, were independently admissible as scientific evidence when a proper foundation has been laid. *Rambo*, 250 Or App at 192 n 1.

their opinions, does not render those opinions inadmissible as unqualified scientific evidence.

"Although the line we draw may be fine, it is not artificial. Specialized expert opinion evidence based on a witness's training and experience draws its force from that training and experience, but not necessarily from the mantle of science. Unlike in *Aman* and [*State v*]. *Marrington* [335 Or 555, 561-63, 73 P3d 911 (2003)], here, the officer did not—apart from his reference to independently admissible scientific tests—rely on the vocabulary of science, nor did he suggest that his conclusions had been reached through the application of a scientific method to collected data. The trial court's ruling scrupulously sanitized the record of any evidence of a scientifically-based protocol, thereby mitigating the risk that [the officer's] testimony would be given unfair weight beyond the credentials that he claimed. The trial court did not err in admitting the challenged evidence."

*Rambo*, 250 Or App at 194-95 (emphasis omitted). In this case, some, or most, of the FSTs that Clarke administered may have been admissible under OEC 702, because they were neither part of the DRE protocol nor otherwise suggestive of a scientific methodology.

However, Clarke's testimony concerning the dilation of defendant's pupils is more problematic. In that regard, defendant asserts:

"OAR 257-025-0012 provides that 'pupil size estimation,' an approved FST, may be performed only by 'officers who have completed the 8-hour "Drugs That Impair Driving" curriculum[.]' Determining 'pupil size under varying light intensities' is part of an approved test that only an officer who has completed DRE training and been certified as a DRE may use. Clarke employed both types of pupil size evaluation. First, he estimated that defendant's pupils were dilated more than normal. Next, Clarke actually performed an approximation of the DRE pupil evaluation in which the DRE examines the sides of the subject's pupils under indirect light and determines their size using a 'pupilometer.' He testified that the state of defendant's pupils was consistent with marijuana consumption. Both the test and the conclusion were scientific evidence."

As noted, in *Rambo*, we approved the trial court's admission as nonscientific expert evidence of an officer's testimony about the defendant's pupil size. However, the trial court in that case had excluded under OEC 403 a portion of the state's proffer, in particular, "the darkroom test" which, as an element of the determination of "pupil size under varying light intensities" at issue here, is a part of the DRE protocol that may only be administered by a DRE officer.[5] *Rambo*, 250 Or App at 189.[6] Thus, in *Rambo*, we did not consider whether the admission of such evidence was improper in the absence of a particularized scientific foundation or a completed DRE protocol.

However, we need not determine whether the pupil-dilation evidence was scientific in nature because, even if it was, defendant's challenge to its admission is not well taken. As discussed, like the defendant in *Rambo*, defendant has consistently asserted that the officer's testimony—including the pupil dilation evidence—was inadmissible to show that defendant was under the influence of a controlled substance because it falsely conveyed the imprimatur of an approved scientific methodology that had not been completed. Here, however, Clarke did not opine, based on his DRE training, that defendant was under the influence of a controlled substance because he had dilated pupils. As the trial court found, Clarke testified that, "based on his law enforcement training, education, and experience, *** dilated pupils are 'indicators' of *possible* consumption of a controlled

---

[5] OAR 257-025-0012 includes a list of approved tests for all sworn police officers and additional tests to be performed only by officers who have met certain criteria. Section three of that rule provides a list of additional tests utilized by an officer "trained and approved by the Oregon State Police as a Drug Recognition Expert (DRE)" and "upon successful completion of the 72-hours of DRE training ***." Among those tests are:

"(a) Physical examination tests including the following: the person's vital signs (pulse, temperature and blood pressure); the person's psychophysical responses (coordination of mind and body); signs of administration of drugs (injection sites, etc.); eye responses (horizontal/vertical gaze nystagmus, eye convergence, *pupil size under varying light intensities*); and physical and behavioral characteristics (muscle rigidity or flaccidity, hyperactivity, *etc.*)."

(Emphasis added.)

[6] Again, the trial court in *Rambo* excluded that evidence "under OEC 403 because of its unfairly prejudicial effect insofar as it bore a false imprimatur of science." *Id.* at 189.

substance." (Emphasis added.) In fact, Clarke never opined that defendant was currently under the influence of a controlled substance at all; rather, he abandoned that focus when it became apparent to him that defendant was under the influence of alcohol. After that point, and throughout trial, the focus of this case instead was on whether defendant's admitted use of marijuana within 24 hours of his arrest had materially contributed to his alcohol intoxication.

Because of the narrow purpose for which the marijuana-related evidence was proffered and received, the trial court did not improperly infer that the eye-dilation evidence was part of a scientific protocol that showed that defendant was under the influence of a controlled substance at the time of the offense. Accordingly, the trial court did not err in denying defendant's motion to exclude the challenged marijuana-related evidence—including the eye dilation evidence—on the ground that it was scientific evidence of controlled substance intoxication that was inadmissible in the absence of a completed DRE.

Affirmed.