Submitted April 29, affirmed September 10, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SCOTT FRANCIS MILLER,
*Defendant-Appellant.*

Klamath County Circuit Court
1103246CR; A152279

335 P3d 355

Peter Gartlan, Chief Defender, and Elizabeth Daily, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

Defendant appeals his conviction for one count of driving under the influence of intoxicants (DUII) ORS 813.010. Defendant had moved to suppress evidence, contending that the arresting officer lacked probable cause to believe that defendant was driving under the influence at the time that the officer ordered defendant to participate in field sobriety tests. The trial court denied defendant's motion. We review for errors of law. *State v. Koroteev*, 222 Or App 596, 600, 194 P3d 842 (2008). In reviewing the denial of the motion to suppress, we are bound by the trial court's findings of historical fact if they are supported by evidence in the record. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). If the trial court failed to make findings on particular disputed issues, we presume that it decided the facts in a manner consistent with its ultimate conclusion. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). On these facts, we affirm.

On December 25, 2011, Officer Bergstrom of the Klamath Falls Police Department saw defendant driving 57 miles per hour in a 35-mile-per-hour zone. Bergstrom turned on his overhead lights behind defendant. Defendant moved into the left-turn lane at an intersection, turned left when the traffic signal changed, and turned right onto a residential street before pulling over. Bergstrom asked for defendant's driver's license, registration, and proof of insurance. Defendant provided his driver's license and initially provided an expired insurance card. He found his current insurance card and showed the expiration date to Bergstrom, but he refused to hand over the insurance card and never provided his registration.

At the suppression hearing, Bergstrom described defendant's demeanor during the stop as "short-tempered and angry" and his speech as "elevated and aggravated." Bergstrom testified that defendant was "more aggravated" than is typical and that his aggravation "ramped up" during the course of the stop. As Bergstrom proceeded to cite defendant for speeding, defendant confronted the officer about the calibration of his radar unit and claimed he was required to present documentation of the unit's calibration

upon request. Defendant was "very angry" when Bergstrom handed him the ticket. Bergstrom asked defendant if he had been drinking. Defendant responded that he had not, and he yelled, "I'll see you in court." He "sped away," creating road noise with his tires. Bergstrom watched defendant veer into the left lane of the narrow two-way street and turn right at the end of the block without stopping at the stop sign. Bergstrom was concerned that defendant was driving in a "reckless manner" in a residential neighborhood on Christmas Day and pursued defendant. Again, Bergstrom turned on his overhead lights, and defendant passed the stop line of a second stop sign before pulling over.

Bergstrom asked defendant why he had sped away. Defendant denied that he had. Bergstrom told defendant that he had failed to stop when turning right at the first stop sign. Defendant denied making a right turn. Bergstrom explained that he had just seen him do so, and defendant replied that he had not seen the stop sign. Bergstrom believed that defendant's inability to recall his driving maneuvers immediately after performing them reflected problems with defendant's perception. Bergstrom testified that the quick succession of traffic violations—"Fifty-seven in a 35, failure to stop at two stop signs, failure to signal three times, and the acceleration away from [the first stop]"—were indicative of intoxication. That conduct had followed defendant's initial and increasing aggravation during the first stop and his difficulty locating his current insurance card. Together, that behavior caused Bergstrom to believe that defendant was under the influence of intoxicants. Bergstrom ordered defendant out of the vehicle to perform field sobriety tests. Defendant was subsequently charged with driving under the influence. He moved to suppress evidence of the investigation. The trial court denied defendant's motion.[1] Defendant entered a conditional plea of guilty and reserved his right to appeal the denial of his motion.

On appeal, defendant argues that Bergstrom ordered defendant to perform field sobriety tests without probable

---

[1] At the hearing, Bergstrom added that he had attended a 40-hour training on detecting intoxication in 2002 and subsequent training sessions. He recounted that he had more than 10 years of law enforcement experience and that he had made approximately 100 DUII arrests.

cause to believe that defendant was driving under the influence of intoxicants, in violation of Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution.[2] A person is under the influence of an intoxicating liquor, controlled substance, or inhalant when the person's physical or mental faculties are adversely affected to a noticeable or perceptible degree. *State v. O'Key*, 321 Or 285, 307 n 31, 899 P2d 663 (1995). Because a field sobriety test constitutes a search under Article I, section 9, *State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994), a warrant is required, or the search must come within a recognized exception to the warrant requirement, *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). Under an exception for exigent circumstances, the officer must have probable cause to believe that an individual is driving under the influence. *State v. Stroup*, 147 Or App 118, 122, 935 P2d 438 (1997). "Probable cause exists when an officer subjectively believes that a crime has been committed and that belief is objectively reasonable in the circumstances." *State v. Spruill*, 151 Or App 87, 90, 948 P2d 726 (1997). The belief must be that it is more likely than not that a crime has been committed. *Id.* The state, therefore, must show that, prior to ordering defendant out of his vehicle, Bergstrom subjectively believed that it was more likely than not that defendant was driving under the influence of intoxicants and that belief was objectively reasonable.

Defendant does not dispute that Bergstrom held the requisite subjective belief, but contends that his belief was not objectively reasonable. Defendant first stresses the lack of physical manifestations of intoxication, such as an odor of alcohol or slurred speech. Defendant argues that, in cases involving erratic driving, the probable cause assessment

---

[2] Article I, section 9, provides, in pertinent part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

The Fourth Amendment similarly provides, in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure, shall not be violated[.]"

Defendant does not develop his federal constitutional claim in any meaningful way, and we decline to consider claims supported by summary references to federal constitutional provisions. *State v. Amaya*, 336 Or 616, 634, 89 P3d 1163 (2004); *State v. McNeely*, 330 Or 457, 468, 8 P3d 212 (2000).

generally includes such physical manifestations. *See State v. Forrest*, 174 Or App 129, 25 P3d 392 (2001) (officer smelled an odor of alcohol in defendant's car, his speech was "halting" and his eyes were watery); *State v. Gilmour*, 136 Or App 294, 901 P2d 894, *rev den*, 322 Or 360 (1995) (defendant spoke "quite rapidly" and had a mild-to-moderate odor of alcohol on his breath). Without that indicia of intoxication, defendant insists, Bergstrom could not have had an objectively reasonable belief that defendant's driving and behavior was due to intoxication. Further, defendant contends that his initial display of an expired insurance card, before finding his current insurance card, was not indicative of intoxication. *State v. Stroup*, 147 Or App 118, 124, 935 P2d 438 (1977) (the defendant's inability to produce her driver's license or registration was not grounds for probable cause, because the record suggested only that she did not have those documents with her). Defendant contends that each indication of impairment upon which Bergstrom relied could easily have other plausible, noncriminal explanations. For example, defendant argues that a driver's denial of certain traffic violations is common when the driver is trying to avoid a ticket and that defendant's erratic driving following the first stop was just as attributable to aggressiveness or frustration as it was to intoxication.

To determine whether probable cause exists, "we consider the totality of the circumstances presented to the officer and reasonable inferences that may be drawn from those circumstances; no single factor is dispositive." *State v. Kappel*, 190 Or App 400, 404, 79 P3d 368 (2003) (citing *Spruill*, 151 Or App at 90-91). We are mindful that "[a]cts that might be viewed as innocent or equivocal to a lay person may be incriminating when viewed by a trained, experienced police officer." *State v. Mendoza*, 123 Or App 237, 241, 858 P2d 1350 (1993).

Under the totality of these circumstances, we conclude that Bergstrom's belief that probable cause existed was objectively reasonable. Bergstrom first suspected that defendant might have been intoxicated during the initial traffic stop, when defendant was "short-tempered and angry" while receiving the citation and refused or failed to give certain documents to Bergstrom. When Bergstrom asked defendant

if he had been drinking, he denied it, sped away, and drove off in a "reckless manner," committing several traffic violations in front of Bergstrom. When Bergstrom asked defendant about the traffic violations, defendant did not recall making the maneuvers and then admitted that he did not see the stop sign. Bergstrom believed that defendant's responses reflected problems with defendant's perception. Taken together, this quick succession of events furnished an objectively reasonable basis for an officer with Bergstrom's training and experience to believe that defendant's unusual behavior was due to intoxication, even in the absence of physical manifestations of intoxication.

The fact that there were other possible, lawful explanations for a person's behavior, such as frustration, does not preclude the conclusion that there was probable cause. *Kappel*, 190 Or App at 404 (citing *State v. Bond*, 189 Or App 198, 203, 74 P3d 1132 (2003)). While defendant's explanations are plausible, "an officer is not required to eliminate alternative explanations to indicia of intoxication before concluding that there is probable cause to arrest." *State v. Vantress*, 195 Or App 52, 59, 96 P3d 867 (2004). Those explanations "do not operate to make [the officer's] determination * * * objectively unreasonable." *Id.* at 59-60. Like the trial court, we conclude that a trained, experienced officer could reasonably believe that it was more likely than not that defendant was driving under the influence of intoxicants. Defendant's rights under Article I, section 9, were not violated when Bergstrom ordered defendant to exit his vehicle to perform field sobriety tests.

Affirmed.