Argued and submitted April 29, reversed and remanded June 2, petition for
review denied October 20, 2022 (370 Or 404)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

IVAN AMISADAI REYES PRADO,
aka Ivan A. Reyes,
*Defendant-Respondent.*

Umatilla County Circuit Court
19CR82136; A174765

511 P3d 1137

The state appeals from a trial court order granting defendant's motion to suppress evidence discovered during a traffic stop. In granting the motion to suppress, the trial court concluded that "probable cause is required for asking a person to perform field sobriety tests." Defendant cross-assigns error to the trial court's order concluding that the officer's question to defendant about marijuana use did not unlawfully expand the scope of the traffic stop. *Held*: The Court of Appeals concluded that the trial court erred in granting defendant's motion to suppress because an officer needs to have reasonable suspicion, not probable cause, before asking a person to perform field sobriety tests. The court rejected defendant's cross-assignment of error.

Reversed and remanded.

Daniel J. Hill, Judge.

Joanna Hershey, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Peter G. Klym, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

The state appeals from a trial court order granting defendant's motion to suppress evidence discovered during a traffic stop. In granting the motion to suppress, the trial court concluded that "probable cause is required for asking a person to perform field sobriety tests." Defendant cross-assigns error to the trial court's order concluding that the officer's question to defendant about marijuana use did not unlawfully expand the scope of the traffic stop. We reject defendant's cross-assignment without discussion. We reverse on the state's sole assignment of error because an officer needs to have reasonable suspicion, not probable cause, before asking a person to perform field sobriety tests. The trial court therefore erred in granting defendant's motion to suppress.

## FACTUAL BACKGROUND

We begin by summarizing the testimony at the hearing on defendant's motion to suppress. Defendant was arrested for driving under the influence of intoxicants (marijuana) after Officer Marcum stopped him for speeding and defendant failed field sobriety tests. Marcum was the only witness for the state at the hearing. He testified that he was on speed enforcement duties around 9:30 p.m. when he encountered a car traveling 79 miles an hour, which exceeded the posted speed limit of 55 mile per hour. Marcum initiated a traffic stop. As he walked up to the car, the driver's side door opened and a man—defendant—leaned out and told the officer that his window did not function. Marcum could smell a strong odor of marijuana. Because it was dark, Marcum had a flashlight. As he got closer to the door, he could see a plastic bag on the floorboard on the driver's side that contained what appeared to be marijuana. Defendant was calm, had bloodshot eyes, and was "slow to talk to [Marcum] and everything as far as, you know, when I asked him for his information." Marcum described that defendant had "kind of slowed—slow speech and reactions to me." Marcum testified that signs of marijuana intoxication include slowed reactions and slowed bodily movements.

Marcum asked defendant if he had smoked marijuana. Defendant stated that he had not smoked marijuana

for "a couple of days." He told Marcum that he and his passenger "usually hot box" in the car.[1]

Marcum returned to his patrol car, checked defendant's "driving status" and asked for a cover unit because he suspected that defendant was driving while intoxicated.

Marcum then "ask[ed]" defendant if he would consent to field sobriety tests. Defendant responded, "Yeah, I haven't smoked today." Marcum "ask[ed]" defendant to get out of his car. Defendant performed the field sobriety tests and his performance led Marcum to believe that defendant was under the influence of marijuana. Marcum arrested him for driving under the influence, and he was later charged by information.

Defendant filed a motion to suppress. Defendant argued that even if the officer had reasonable suspicion to believe that defendant was driving under the influence, that "reasonable suspicion was dispelled before asking [defendant] if he would submit to" field sobriety tests. Because the reasonable suspicion had dispelled, defendant argued that Marcum unreasonably extended the stop by asking defendant if he would conduct field sobriety tests. Defendant additionally argued that any subjective suspicion Marcum may have had was not objectively reasonable. Finally, defendant argued that Marcum did not have probable cause to arrest defendant.

At the close of testimony, the state framed the primary question for the court to decide: "We're talking about reasonable suspicion, specifically whether there's enough for Officer Marcum to reasonably suspect that the defendant was under the influence of an intoxicating substance, and ask him to step out of the vehicle for further investigation." The state argued that Marcum had reasonable suspicion to ask defendant to perform field sobriety tests based on the odor of marijuana, the presence of marijuana, defendant's slowed reaction in retrieving documents and responding to the officer, and his bloodshot eyes. The state argued that Marcum's reasonable suspicion was objectively reasonable

---

[1] Marcum testified that "hot boxing" refers to the process where individuals fill a car with marijuana smoke and then inhale to get high from the marijuana.

and that after defendant performed the field sobriety tests, Marcum had probable cause to arrest defendant.

The trial court took the matter under advisement and issued a letter opinion granting the motion to suppress. It made a number of factual findings and legal conclusions that are critical for the question on appeal, particularly with respect to whether the officer "asked" or "ordered" defendant to perform field sobriety tests. Those findings included:

- The car smelled of marijuana.

- The officer saw a bag of what appeared to be marijuana.

- The officer testified that defendant had bloodshot eyes and slowed reactions.

- Defendant stated that he had not used marijuana for two days.

- Defendant admitted that he hot boxes in the car.

- The officer "did not identify anything additional that was noteworthy of defendant prior to asking him to get out of the car."

- The officer "had the defendant get out to do field sobriety tests."

The court concluded that the questions that Marcum asked about marijuana use were reasonable under the circumstances and did not unconstitutionally extend the stop. The court then framed the next question: "[P]rior to *ordering* defendant out of his vehicle, did the officer subjectively believe that it was more likely than not that defendant was driving under the influence of intoxicants and [whether] that belief was objectively reasonable[?]" (Emphasis added.)

Having framed the question that way, the trial court concluded that Marcum did not have probable cause to require a field sobriety tests: "[W]hile this is [a] closer question than normal, the matters weighing for probable cause are outweighed by those against." The court thus concluded that the officer did not have "probable cause to require the field sobriety tests" prior to defendant "getting out of the car."

The state filed a motion for reconsideration. It framed the issue for reconsideration as follows: "Whether this court erred when it held that an officer must have 'probable cause' to believe a driver is operating a vehicle while under the influence of intoxicants before the officer can *ask* the driver to consent to field sobriety test." (Emphasis added.) The state asserted that the correct legal standard was whether the officer had reasonable suspicion to believe that defendant was intoxicated. If he did, the officer could ask defendant to perform field sobriety tests. The state thus urged the trial court to apply that legal standard.

In summary fashion, the trial court denied the motion to reconsider. The trial court concluded that the "state is apparently confused with the language of the law describing probable cause, as probable cause is required for *asking* a person to perform field sobriety tests." (Emphasis added.) In reaching that conclusion, the trial court relied on our opinion in *State v. Miller*, 265 Or App 442, 335 P3d 355 (2014). In that case, the officer stopped defendant twice, and after the second stop, the officer "*ordered* [the] defendant out of the vehicle to perform field sobriety tests." *Id.* at 444 (emphasis added). We held that the state was required to prove that "prior to ordering [the] defendant out of his vehicle," the officer had probable cause to believe he was driving under the influence of intoxicants. *Id.* at 445.

As noted, the state appeals from the trial court's order, arguing that the trial court applied a higher standard than required to ask a person to perform field sobriety tests. We agree and reverse.

## ANALYSIS

The legal principles underlying this appeal are undisputed. "[P]robable cause is not a necessary prerequisite to *asking* a defendant for consent to perform field sobriety tests in the context of a DUII stop." *State v. Ramos*, 149 Or App 269, 272, 942 P2d 841 (1997) (emphasis in original). An officer can expand the scope of a lawful traffic stop—including by asking for consent to search[2]—if they develop

_____

[2] Field sobriety tests are searches under Article I, section 9, of the Oregon Constitution. *State v. Finney*, 154 Or App 166, 171, 961 P2d 256 (1998).

reasonable suspicion that a defendant has engaged in criminal conduct. *State v. Arreola-Botello*, 365 Or 695, 714, 451 P3d 939 (2019). In contrast, if an officer *compels* a defendant to participate in field sobriety tests, the officer must have probable cause, in conjunction with a recognized exception to the warrant requirement (generally exigent circumstances), to do so. *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994).

So framed, the question here reduces to whether the officer asked defendant for his consent to perform field sobriety tests—in which case the officer needed reasonable suspicion—or compelled him to do so—in which case the officer needed probable cause. In answering that question, we defer to the trial court's factual findings where evidence in the record supports those findings, *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), and review the trial court's legal conclusions for errors of law, *State v. Koroteev*, 222 Or App 596, 600, 194 P3d 842 (2008).

Unfortunately, the trial court's findings on that factual question are somewhat confusing. As set forth above, in its factual findings, it framed the facts both as the officer "asking [defendant] to get out of the car" and that the officer "had the defendant get out to do field sobriety tests." In its legal conclusions, it concluded that the officer did not have probable cause "to require the field sobriety test." In denying the state's motion for reconsideration, the court concluded that "probable cause is required for asking a person to perform field sobriety tests."

Those findings are inconsistent, inasmuch as the court seemed to conclude both that the officer asked for consent and that the officer ordered defendant to perform field sobriety tests. As discussed above, the distinction makes all the difference in the level of suspicion required. But even if we were to assume that the court found that the officer ordered defendant to conduct field sobriety tests, such a finding would not be supported by the evidence in the record. The officer never testified that he did anything other than ask or request that defendant perform the field sobriety tests. To the extent that the trial court found that the officer ordered defendant to do so, there is no factual evidence in the record to support such a finding. *Aquino v.*

*Baldwin*, 163 Or App 452, 460, 991 P2d 41 (1999), *adh'd to as modified on recons*, 169 Or App 464, 12 P3d 51 (2000) (We are not bound by factual findings that are "entirely unsupported by the trial court record").[3]

  In light of that conclusion, we must then decide whether the officer's request was supported by reasonable suspicion. Based on the trial court's findings, we easily conclude that it was. The officer smelled marijuana and observed what he believed to be a bag of marijuana on defendant's car floor. Defendant had red, watery eyes and slowed reactions, consistent with symptoms of intoxication from marijuana use. That constellation of factors supports reasonable suspicion. *See State v. Cottrell*, 215 Or App 276, 280, 168 P3d 1200, *rev den*, 343 Or 554 (2007) (an officer's observations of the defendant's bloodshot, watery eyes, odor of alcohol, and "inattentive and messy eating" supported a finding of reasonable suspicion); *State v. Liebrecht,* 120 Or App 617, 618, 853 P2d 1322, *rev den*, 317 Or 584 (1993) (odor of alcohol emanating from the car and the defendant's admission that he had been drinking created reasonable suspicion of driving under the influence).

  In urging us to affirm the trial court's judgment, defendant argues that the state did not establish that defendant voluntarily consented to the field sobriety tests and the trial court thus correctly granted the motion to suppress. It is true that the state did not establish voluntary consent. The difficulty with that argument is that the question whether defendant involuntarily consented to perform field sobriety tests was never before the court. The parties' arguments and the trial court's ultimate ruling were framed by defendant's motion to suppress. That motion to suppress did not challenge defendant's consent. Instead, it focused exclusively on whether the officer had objectively reasonable suspicion before the point in time when he asked for consent to

---

[3] Indeed, that is what both defense counsel and the state understood as well. In defendant's motion to suppress, there are no fewer than a half dozen references to what the officer said, all of which were framed in terms of the officer asking or requesting consent for field sobriety tests. In fact, the first time any mention was made of the officer compelling defendant to perform field sobriety tests was the trial court's opinion. Up to that point, no party had asserted—and no witness had testified—that the officer ordered defendant out of the car.

conduct field sobriety tests or whether that reasonable suspicion had dissipated. As we have repeatedly observed, "A written motion to suppress 'serves dual functions[:] It frames the issues that the court will be required to decide, and it notifies the state of the contentions that it must be prepared to address at the hearing on the motion.'" *State v. Parnell*, 278 Or App 260, 265, 373 P3d 1252 (2016) (quoting *State v. Sweet*, 122 Or App 525, 529, 858 P2d 477 (1993) (brackets in *Parnell*)). Nothing in defendant's written motion (or subsequent oral argument) apprised the state, or the trial court, of his argument on appeal that the state had to prove that defendant voluntarily consented to perform field sobriety tests. *Cf. State v. Hallam*, 307 Or App 796, 802-03, 479 P3d 545 (2020) (discussing defendants' obligations with respect to motions to suppress evidence). We therefore decline to hold that because the state did not prove that defendant's consent was voluntary, the trial court's ruling was correct (albeit for a different reason).

Reversed and remanded.